IN RE the MARRIAGE OF:

Jean Lill EVJEN, Petitioner-Respondent,

v.

Robert Erbe EVJEN, Respondent-Appellant.†

Court of Appeals

*No. 92-0649. Submitted on briefs October 1, 1992.—Decided October 21, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review denied.

679

680

On behalf of respondent-appellant the cause was submitted on the briefs of *Terrence P. Fox* of *Dewane, Dewane, Kummer & Lambert* of Manitowoc.

On behalf of petitioner-respondent the cause was submitted on the brief of *Jo-Ann Millhouse,* corporation counsel.

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J. Robert Erbe Evjen appeals from an order of the family court modifying his child support obligation. Robert contends that the family court abused its discretion when it considered as part of his gross monthly income for child support a portion of the wages paid to his current wife by his closely held corporation. Because we conclude that the family court did not abuse its discretion by concluding that Robert diverted corporate income to reduce his child support obligation, we affirm that portion of the order establishing Robert's current child support obligation.

Next, Robert argues that the family court abused its discretion by not considering his request for attorney's fees incurred in preparing for a hearing at which Jean Lill did not appear. We conclude that the family court abused its discretion by not considering Robert's request for attorney's fees because it had notice of Robert's request and there was sufficient evidence available for the exercise of discretion. Therefore, we reverse and remand with directions to conduct a hearing on the issue of attorney's fees.

Finally, Robert maintains the family court abused its discretion by not considering his request to modify his obligation to pay 100% of the minor children's uninsured medical expenses. After an examination of the record we conclude that the family court was not given notice of this request; further, Robert did schedule a

subsequent hearing on this issue which was adjourned because of his failure to properly serve Jean Lill, and Robert failed to pursue this request. Therefore, we conclude that this issue has not been properly preserved for appeal and affirm the family court.

Jean Lill and Robert were divorced on November 8, 1984. The divorce judgment ordered Robert to pay $600 per month in child support for the parties' two minor children. In response to a motion by Robert to modify the child support obligation, an order was entered on August 31, 1987 finding that Robert's annual income was $41,000 and changing his child support obligation to $800 per month. This appeal arises from a motion Robert filed on May 15, 1989 to modify child support and recover overpayment of child support.

Robert is a funeral director employed by Erbe Evjen Funeral Home. The funeral home is operated by a closely held corporation called Robert Evjen, Inc. of which Robert is sole shareholder and president. In 1989, Robert was receiving an annual salary of $18,000; in addition, he was entitled to gross monthly rent from the corporation of $500 for use of the building where the funeral home was located. This rent was subject to interest of $154 per month which Robert owed his mother on a mortgage. Robert's current wife, Terry, is secretary of the corporation and is paid an annual salary of $11,350. Before Robert employed Terry, he had an annual outlay of $2400 to $2500 to accountants and assistants; with Terry's assistance Robert assumed all of the tasks that he previously had contracted out to others. Robert testified that in the five years before the hearing, Robert Evjen, Inc. reported a profit for only one year.

Jean Lill also had remarried since the parties' divorce and has obtained a college degree. At the time of the hearing she had been employed full time for less than

a month and expected to earn approximately $12,000 annually.

In its decision, the family court included as part of Robert's gross income for child support $746 of Terry's monthly income. The family court found that there was no credible evidence supporting Robert's assertion that it was necessary to hire Terry. The court concluded that it would include in its computation Terry's salary less $200 per month that Robert previously had paid to others for bookkeeping and assisting with funerals. The court also included the gross monthly rent Robert was to receive from the corporation, even though it was in arrears, on the theory that payment was at Robert's sole discretion, and he should not control if and when he would receive a rental payment from his closely held corporation. The family court determined that Robert's gross monthly income for child support purposes was $2582. Because one child had graduated from high school, the family court set monthly child support at 15% of Robert's gross monthly income, or $387.30 per month.[1]

## MODIFICATION OF CHILD SUPPORT

Although a modification of child support may be made in the sound discretion of the family court, it is to be made only upon a finding of a substantial or material change in circumstances. *See Abitz v. Abitz,* 155 Wis. 2d 161, 174, 455 N.W.2d 609, 614 (1990). We will not reverse the decision of the family court unless there has been an abuse of discretion. *Id.* We will affirm the family court if its decision exhibits a rational reasoning process

---

[1]The family court deviated from the 17% child support guideline because the minor child spent a lot of time with Robert.

based on the facts in the record or reasonable inferences from those facts and the correct application of the proper legal standards to those facts. *Id.* at 174, 455 N.W.2d at 615.

Robert insists that the family court improperly considered the salary paid to Terry by the corporation because the court failed to make an explicit finding that he was "shirking." We previously have stated that the noncustodial parent may be shirking his or her child support obligations when he or she has chosen not to fully and diligently pursue his or her best employment opportunities. *In re R.L.M.,* 143 Wis. 2d 849, 852, 422 N.W.2d 890, 892 (Ct. App. 1988).

This is not a "shirking" case. The family court did not find, either explicitly or implicitly, that Robert was trying to dodge his child support obligations by avoiding the best opportunities available for funeral directors. The family court found that Robert was attempting to dodge his child support obligations by diverting corporate income to his current wife. The family court found that there was no credible evidence or a reasonable inference that supported the need of the corporation to hire Terry at an annual salary of $11,350 to perform tasks that previously had cost the corporation $2400 to $2500 annually.

We agree with the family court's exercise of discretion. In *Lendman v. Lendman,* 157 Wis. 2d 606, 460 N.W.2d 781 (Ct. App. 1990), this court wrote that on a case-by-case basis the family court could consider corporate income in determining the financial obligations of obligors. *Id.* at 614–15, 460 N.W.2d at 785. In that case, we acknowledged that if the family court were prohibited from considering corporate income, obligors might be

encouraged to bury income under the corporate structure to dodge the payment of financial obligations. *Id.* at 614, 460 N.W.2d at 784–85.

██

It does not matter what guise the obligor uses; whether the corporate income is labeled "retained earnings," "earned surplus," or "salary," a family court is authorized to pierce the corporate shield if it is convinced that the obligor's intent is to avoid financial obligations arising from the dissolution of the marital relationship. Depending upon the case, it is the obligation of the family court to determine if corporate income or profits are a necessary part of a well-managed corporation or an excuse for the sole shareholder to keep income or profits from being considered when the family court is setting financial obligations. *See id.* at 614–15, 460 N.W.2d at 785.

We have expressed concerns in the past when obligors have manipulated the corporate structure to camouflage or bury the obligors' true income status. *See Schinner v. Schinner,* 143 Wis. 2d 81, 104–05, 420 N.W.2d 381, 390 (Ct. App. 1988). In such cases we have urged the family court to "utilize its creative talents to monitor and control such deceptive tactics." *Id.* at 105, 420 N.W.2d at 390.

██

Here, the family court properly found that by having the corporation pay Terry a substantial salary, Robert was using the corporation to bury his true income. The family court used its creative talents to resurrect that portion of the salary paid to Terry which bore no rational relationship to the amount Robert previously paid for work done under contract with two other people.

The family court's inclusion of a portion of Terry's salary from the corporation is consistent with the definition of "imputed income for child support" adopted by the Department of Health and Social Services in its rules on the child support percentage of income standard. Wis. Adm. Code sec. **HSS 80.02**(14). In those rules, income which has been diverted to avoid paying child support may be considered income for the purpose of establishing child support. Wis. Adm. Code sec. **HSS 80.03.**

■

Because we conclude that the family court did not abuse its discretion by including a portion of the salary paid to Robert's current wife in setting Robert's child support obligation, we affirm that portion of its order establishing that Robert has a gross monthly income of $2582 and ordering him to pay 15% of his gross monthly income for child support.

### ATTORNEY'S FEES

Robert argues that the family court erred by failing to address his request for a contribution to attorney's fees in the amount of $400, representing the fees he incurred when Jean Lill failed to appear at the first scheduled hearing on the motion to modify child support. Jean Lill responds that the trial court did not commit any error because Robert failed to prove need, ability to pay, and the amount and reasonableness of the fees.

We will consider this issue because Robert noticed his request for attorney's fees in the motion to modify child support. When Jean Lill failed to appear at the first hearing, Robert again put the court and counsel on notice that he would request attorney's fees. In addition,

Robert argued his request for attorney's fees in his brief to the court and submitted a statement from counsel detailing the fees incurred. Jean Lill did not oppose the award of attorney's fees in the family court, nor did her counsel argue it in any brief submitted to the court.

We remand this matter to the trial court to conduct a hearing and to make findings as to the reason Jean Lill failed to appear at the first hearing, the needs of Robert for contribution to his attorney's fees, the ability of Jean Lill to pay, and the reasonableness of the total fees. *See Ashraf v. Ashraf*, 134 Wis. 2d 336, 346, 397 N.W.2d 128, 132–33 (Ct. App. 1986).

### UNINSURED MEDICAL EXPENSES

Robert next contends that the family court erred in failing to address his request that the provision of the divorce judgment requiring him to pay the children's total uninsured medical payments be modified to require the parties to share such expenses equally. Jean Lill responds that Robert did not bring this issue to the attention of the trial court and asks us not to consider it for the first time on appeal.

We conclude that Robert has waived this issue by failing to put the family court on notice that he was seeking a modification of his obligation to pay all uninsured medical payments. First, Robert's initial motion did not include any request that the family court revisit the payment of uninsured medical costs. Second, at the hearing Robert testified only that he was paying all of the uninsured medical costs; neither he nor his counsel presented any other evidence or argument at the hearing. Third, Robert's letter brief to the family court argues the

division of uninsured medical costs, but the amounts argued in the brief were never a part of the court record. Finally, Robert filed a motion to reconsider the family court's decision on child support and specifically noticed the issue of uninsured medical costs. However, he failed to properly serve Jean Lill and she did not appear at the hearing on the motion for reconsideration. The hearing was adjourned, and Robert never requested that the hearing be rescheduled.

This issue was not properly raised below. Robert has a responsibility to direct the family court's attention to issues that are being submitted for the court's determination. *See Gauer v. Gauer,* 34 Wis. 2d 451, 457–58, 149 N.W.2d 533, 536 (1967). The failure to specify the issue of uninsured medical costs in the motion and the paucity of evidence presented during the trial would not have directed the court's attention to this issue. The argument in Robert's letter brief could not put the court on notice because it contained facts that were not presented during the hearing. Finally, Robert had two opportunities to litigate this issue in the family court when he filed a motion for reconsideration and failed to take advantage of those opportunities.

The general rule is that an appellate court will not decide issues not properly raised in the trial court. *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145 (1980). This is especially true where the issue involves questions of fact not brought to the attention of the family court. *See id.* at 444, 287 N.W.2d at 145. Therefore, we will not consider Robert's argument on this issue.

Costs are denied to both parties.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.