Margaret SMITH, Plaintiff-Respondent,

v.

Richard GOLDE, D.C., Defendant-Appellant.†

Court of Appeals

*No. 97–3404. Submitted on briefs December 2, 1998.—Decided January 26, 1999.*

(Also reported in 592 N.W.2d 287.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael B. Van Sicklen* and *Foley & Lardner* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas Kent Guelzow* and *Guelzow & Laufenberg, Ltd.* of Eau Claire.

Before Cane, C.J., Myse, P.J., and Hoover, J.

HOOVER, J. Richard Golde appeals a default judgment entered against him as a sanction. Golde claims that the trial court erred by: (1) failing to properly exercise its discretion when it granted a default judgment against him; (2) granting default judgment without requiring the respondent to provide notice of

his potential monetary liability; (3) prohibiting Golde from presenting any evidence at the hearing on damages; and (4) permitting a non-party witness to testify about prior bad acts at the damages hearing after previously ruling that her testimony was inadmissible. We conclude that Golde was denied his right to present affirmative evidence at the damages hearing and therefore reverse and remand to the trial court for a new damages hearing. We affirm the trial court on all other issues.

## I. Facts

Margaret Smith had dated Golde from April 1994 through November 1995. On December 27, 1995, Smith filed a summons and complaint against Golde alleging battery, intentional infliction of emotional distress, and conversion. She requested compensatory and punitive damages. The complaint arises from Smith's allegations that during their relationship, Golde intentionally and repeatedly committed acts of battery against her.

The default judgment resulted from a series of pretrial motions and sanctions entered against Golde and his trial attorney. A hearing on the first pretrial motion resulting in sanctions was held on August 25, 1997. Golde brought a motion to clarify whether his counterclaim was dismissed, require that Smith give her deposition before any other deposition, set a new scheduling order, and provide a protective order regarding the location of the depositions. Smith, in turn, brought a motion that Golde submit to an independent medical/psychiatric/psychological evaluation, be sanctioned for his failure to appear at his scheduled deposition on August 18, 1997, be held in contempt for his failure to attend the deposition, and be prohibited from seeking

521

an independent medical/psychiatric/psychological evaluation of Smith. The trial court ordered that Golde be deposed first and sanctioned him for failing to appear at the scheduled deposition.[1]

The second pretrial hearing resulting in sanctions occurred on October 7, 1997. The hearing principally involved Golde's motion to dismiss, alleging that a pending bankruptcy deprived the trial court of subject matter jurisdiction. The motion also asserted that Smith was judicially estopped from asserting her claims and that she was not entitled to equitable relief because of the "unclean hands" doctrine. Finally, Golde moved in limine for an order excluding testimony of other acts evidence by Gail Schmidt and Kay Peterson. The court denied Golde's motion to dismiss because no bankruptcy proceeding was pending at the time of the motions and the matter was untimely. The court observed that "[a]rguing these motions the week before trial, is outrageous. This conduct violates every rule of fair play and reasonableness. . . . [N]othing the defense has argued today in any way, would justify this action." The court imposed sanctions against Golde and his attorney for bringing his motion. The court, however, granted Golde's motion to exclude Schmidt's and Peterson's other acts testimony.

The final motion hearing, resulting in the default judgment against Golde, was held on October 10, 1997. The motion involved Smith's request for sanctions against Golde for taking twenty-three depositions, including those from twenty lay people, during the last

---

[1] The court also held that Smith did not need to attend an independent medical examination, that Smith be permitted to conduct an independent medical examination of Golde, that Golde's counterclaims be dismissed, and that depositions would be taken at the Eau Claire County Courthouse.

week of discovery. Smith alleged that the depositions occurred with inadequate notice and that many of Golde's questions were irrelevant. The court granted Smith's motion and sanctioned Golde by striking his answer, resulting in a default judgment. The court's sanction was not based exclusively on the twenty-three depositions, but on the accumulation of "wholesale, repeated, flagrant and egregious violation of procedural rules and ethics on behalf of the defense."

A damages hearing was held on October 13, 1997. The court set forth the hearing procedure:

> Well, it seems to me, as far as procedure is concerned, that, if you each wanted to make some kind of a statement before we started this morning, that would be fine. Plaintiff would present evidence. I certainly think it's appropriate, [Golde's attorney], for you to be able to question any of the plaintiff's witnesses. But I don't see it as, necessarily appropriate for the defense to present evidence, given the status of the case.[2] The court, for example, can set damages simply on affidavits in a default judgment. So let's proceed with that understanding.

Therefore, while Golde was allowed to cross-examine Smith's witnesses, he was not permitted to present affirmative evidence to mitigate, or to be heard as to the diminution of damages. At the hearing's conclusion, Golde made an offer of proof regarding the evidence he would have presented, which included Trent MacDonald's police report, the deposition testimony of Dr. Beverly Bliss, testimony showing that Gail

---

[2] It appears that the trial court precluded Golde from presenting evidence not as an additional sanction, but because the damages hearing was held in connection with a default judgment.

Schmidt listed Richard Golde as an employment reference,[3] and officer Quall's police report.[4]

At the damages hearing, Smith offered Schmidt's other acts testimony, which the trial court had previously excluded from evidence. Golde objected to Smith presenting other acts evidence:

> I believe it's apparent from [Smith's attorney's] opening that he intends to prove his damage portion of his trial by a number of events which, at least in part, if not in whole, involve other acts evidence. . . . I simply will reserve the right to object to that, based on the court's ruling, during the context of the presentation.

The court reconsidered its previous ruling and concluded that other acts evidence would be admissible regarding punitive damages:

> I should tell you that, as far as what we've characterized as other acts evidence, I still believe that that is not admissible as to liability. But I have reconsidered the position that I took as to its admissibility on the issue of punitive damages. I believe it is admissible in that regard. . . . So I will allow the other acts evidence that's been referred to here today to come into evidence only insofar as it will affect whatever decision I reach on punitive damages.

Although Golde objected to the other acts evidence, it was not on the basis that he was "prohibited" from

---

[3] This testimony presumably relates to Golde's desire to impeach Schmidt's purported fear of him. Schmidt's listing Golde as a reference might belie her claimed fear because such a listing would allow him to locate her whereabouts.

[4] Schmidt reported to Quall that she had been hit at least one other time in 1980, which was allegedly in conflict with her testimony that Golde hit her on numerous occasions.

conducting discovery of the witness, nor did he request a continuance. The trial court entered judgment for $1,013,200 in damages. Golde appeals.

## II. Analysis

### A. Default Judgment

■■■■

Golde first argues that the trial court erroneously exercised its discretion by sanctioning him with a default judgment. Under § 804.12(2)(a)3, STATS., the trial court may enter a default judgment for violation of discovery statutes or orders. *Kerans v. Manion Outdoors Co.*, 167 Wis. 2d 122, 130, 482 N.W.2d 110, 113 (Ct. App. 1992).[5] We review a trial court's decision to enter a default judgment under the erroneous exercise of discretion standard. *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 541–42, 535 N.W.2d 65, 69 (Ct. App. 1995). "A court properly exercises its discretion if it examines relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Kerans*, 167 Wis. 2d at 130, 482 N.W.2d at 113.

---

[5] Section 804.12(2)(a)3, STATS., provides:

(a) If a party or an officer, director, or managing agent of a party or a person designated under s. 804.,05(2)(e) or 804.06(1) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under sub. (1) or s. 804.10, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering judgment by default against the disobedient party.

To enter a default judgment, the trial court must determine that the "noncomplying party's conduct is egregious or in bad faith and without a clear and justifiable excuse." *Hudson Diesel*, 194 Wis. 2d at 542, 535 N.W.2d at 69. We will sustain the court's default judgment sanction if there is a reasonable basis for its determination. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 276–77, 470 N.W.2d 859, 865 (1991). Here, the trial court found Golde's conduct to be egregious. The court considered "[t]he cumulative effect of what I've seen in the last several months . . . a wholesale, repeated, flagrant and *egregious* violation of procedural rules and ethics on behalf of the defense. . . . Were I just ruling today on the issue of these last depositions, the sanctions that I would impose would be different." (Emphasis added.)

The court conducted a thoughtful analysis on the record listing all of Golde's acts cumulatively supporting its egregiousness determination:

> Some of the things that seem particularly important to note for the record to me are the two previous attempts to secure ex parte orders. I'm still not sure that the defense counsel understands how serious that was.
>
> . . . .
>
> It wasn't slipping me a proposed order in my office without the other side having the opportunity to respond to the request to sign that order.
>
> The same thing applies to the request for the ex parte order to stop the deposition. . . .
>
> . . . I was always troubled by the failure to turn over the NOVUS records and sign the medical authorizations. I was troubled by the way [Smith's attorney] received the NOVUS record was through [Golde's

attorney] rather than directly from the NOVUS program itself and that there was that ridiculous request that I examine the records in camera . . . .

It was Dr. Golde's refusal to appear at the deposition leading to sanctions, and at our last hearing there were sanctions imposed for the filing of the motion to dismiss related to the bankruptcy proceedings.

All of that leads up to what we're faced with today. The notice of the depositions improperly identified them as depositions for trial. It did not give 'adequate notice of the time. The statute requires ten days notice, and another statute says that when less than eleven days notice is required, Saturdays and Sundays do not count, so here in terms of calendar days, fourteen days was required. Half that time notice was given to [Smith's attorney].

I believe it's unrefuted in the record that his office was never consulted about scheduling these things so that on very short notice he had to drop everything and make himself available for about a week of depositions of some twenty or twenty-three people.

I thought it interesting that the notice of the depositions was sent out before any of the subpoenas were served. . . .

Of course the whole schedule fell apart . . . and all of this happens in the last week of discovery on a case that's been pending for two years.

. . . .

. . . [T]hen we come to the substance of the depositions themselves. . . .

. . . .

These kinds of questions and this kind of conduct in my mind without question caused these people humiliation and embarrassment and was a complete waste of time.

The court emphasized that "these depositions show[ ] that they were an[ ] abuse of legal procedure; that the notices, subpoenas, questions violate the rules of civil procedure and, in my opinion, are a breach of basic standards of decency and good conduct. . . . I don't see that monetary sanctions will accomplish one thing." The sanction was imposed for what the trial court could properly characterize as Golde's and his attorney's egregious and unjustified conduct. It is apparent from the record that the trial court properly exercised its discretion by examining the relevant facts and applying the proper legal standards. *See Kerans,* 167 Wis. 2d at 130, 482 N.W.2d at 113. Based upon its analysis, we conclude that the trial court demonstrated a rational thought process and reached a conclusion that a reasonable judge could reach under the facts of the case. *See id.*

B. Imputing Attorney's Conduct

Golde maintains that he was unfairly punished for his attorney's alleged abuses. *Johnson* rejected a similar argument. *Johnson,* 162 Wis. 2d at 283, 470 N.W.2d at 867–68. In *Johnson,* the plaintiffs argued that counsel's egregious conduct should not be imputed to the innocent litigants to permit dismissal; the court should merely impose monetary sanctions upon their counsel. *Id.* The court held that:

> [T]he plaintiffs' proposed rule, while facially appealing, is unworkable and would undermine the circuit court's ability to effectively administer judicial business for the same reasons as would an absolute rule requiring a showing of prejudice. The

rule is unworkable because it would permit parties to avoid harsher sanctions by remaining detached from their attorney's handling of their lawsuit.

*Id*. Golde's argument is thus meritless.

## C. Failure to Provide Required Deposition Notice

Golde further contends that the court erred by sanctioning him for his attorney's failure to provide counsel with a ten-day notice of third-party depositions under § 805.07(2), STATS.[6] Golde's argument is unpersuasive because the ten-day notice requirement was not essential to the trial court's decision. The court stressed that even if the notice requirement did not apply, "the other comments I made in my ruling last week would still lead me to the same result." The court stressed that, "[w]ere I just ruling today on the issue of these last depositions, the sanctions that I would impose would be different." The court stated, however, that "[t]he cumulative effect of what I've seen in the last several months is a wholesale, repeated, flagrant and egregious violation of procedural rules and ethics on behalf of the defense."

## D. Failure to Provide Notice of Monetary Liability

██
Golde argues that the trial court erred when it granted default judgment without first requiring Smith to provide Golde with notice of his potential monetary liability. Golde neglected to raise this issue at the trial court level and it is therefore waived. An appellate court need not decide issues not properly

---

[6] Golde claims that under § 805.07(2), STATS., the 10-day notice requirement only applies to depositions requesting the production of documents.

raised in the trial court. *Evjen v. Evjen*, 171 Wis. 2d 677, 688, 492 N.W.2d 361, 365 (Ct. App. 1992).

E. Precluding Golde's Proof Regarding Damages

■

We agree with Golde's assertion that the trial court erred by prohibiting him from presenting evidence at the damages hearing. Under § 806.02, STATS., upon the entry of a default judgment, the court may hold a hearing or inquiry to determine damages. *See Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 478–79 n.5, 326 N.W.2d 727, 735–36 n.5 (1982). If the defendant contests the amount of damages, he may appear at the hearing to assess damages, cross-examine the plaintiff's witnesses, and present evidence to mitigate or be heard as to the diminution of damages. *Midwest Developers v. Goma Corp.*, 121 Wis. 2d 632, 651, 360 N.W.2d 554, 564 (Ct. App. 1984). As Golde correctly points out, the trial court need not hold a hearing if the amount of damages are alleged in the complaint and the defendant fails to contest the amount. *See id.* at 652, 360 N.W.2d at 564. If additional proof is necessary, however, the court may hold a hearing, and the defendant has the right to participate and present evidence on his behalf. *Id.* at 651, 360 N.W.2d at 564.

■

We have examined Golde's rather sparse offer of proof. The value of the evidence referred to in the offer appears dubious at best. Further, the admissibility of some of the evidence is questionable. Nevertheless, it may be that the narrow issues on appeal do not permit us to apprehend the full significance of the proffered evidence. Moreover, neither Golde nor the trial court had the opportunity to address admissibility concerns. Therefore, because Golde had a right to present evi-

530

dence and having a voice in a controversy is such a substantial and fundamental right, we will err on the side of remanding so the right may be exercised.[7]

## F. Permitting Other Acts Evidence

Finally, Golde claims the trial court erred by reversing its position and permitting a non-party witness, Schmidt, to testify about prior bad acts at the damages hearing, after having previously "blocked"[8] Golde's efforts to depose or conduct other discovery of the witness. At the damages hearing, the court reconsidered its decision regarding other acts evidence:

> I have reconsidered the position that I took as to its admissibility on the issue of punitive damages. I believe it is admissible in that regard . . . . So I will allow the other acts evidence that's been referred to

---

[7] The parties do not address the issue whether on remand Golde would be confined to those matters raised in his offer of proof before the trial court. We see no reason why Golde should be permitted to take advantage of the passage of time to expand the damages evidence beyond what he claimed he was prepared to prove at the hearing.

[8] Golde uses the words "blocked" and "prohibited" in his brief in referring to not having deposed Schmidt before pretrial. There is no indication in the record before us that the trial court expressly barred Golde from discovering Schmidt's evidence. Golde claimed in pretrial motions that he was prevented from deposing Schmidt because he did not know her whereabouts. He asserted that Smith's attorney implied in depositions that he knew where she resided. In the court's October 29, 1997, order, it stated that Golde's counsel "is correct in his argument that this should be discoverable material, even though there may be an argument the defendant has not made a showing of attempting to get this material." Golde succeeded in his motion in limine, however, and the issue appeared to have become moot.

here today to come into evidence only insofar as it will affect whatever decision I reach on punitive damages.

We first address whether the court erred by permitting prior bad acts testimony regarding punitive damages. "A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has a reasonable basis and was made in accordance with accepted legal standards and in accordance with the facts of the record." *Lievrouw v. Roth*, 157 Wis. 2d 332, 348, 459 N.W.2d 850, 855 (Ct. App. 1990). Section 904.04(2), STATS., addresses admissibility of "other crimes, wrongs or acts:"

> OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■■■■

Other acts evidence may be admitted for purposes other than those enumerated in § 904.04(2), STATS. *State v. Kaster*, 148 Wis. 2d 789, 797, 436 N.W.2d 891, 894 (Ct. App. 1989). We conclude that Schmidt's testimony concerning prior batteries was properly admitted both for an enumerated purpose and one akin to the listed permissible purposes under § 904.04(2). Punitive damages are designed to punish and deter. *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 302, 294 N.W.2d 437, 458–59 (1980). It is self-evident that the greater the number of abusive incidents, the greater the need for deterrence and, correspondingly, an award calculated to achieve that purpose. Golde's history of violence thus

informs on the amount of damages necessary to deter future batteries. Moreover, entitlement to punitive damages rests upon proof of either intentional disregard of the plaintiff's rights or maliciousness. Section 895.85(3), STATS. A history of assaultive behavior can support an inference of either intent to harm or that a defendant acted maliciously on a specific occasion. *See Anello v. Savignac*, 116 Wis. 2d 246, 252, 342 N.W.2d 440, 443 (Ct. App. 1983).

Golde finally asserts that the trial court erred by permitting Schmidt to testify because he was denied the right to depose or conduct other discovery of the witness. Golde neither raised this argument before the trial court nor did he request a continuance so he could conduct discovery. Therefore, we deem the issue waived and will not address it on appeal. *See Evjen*, 171 Wis. 2d at 688, 492 N.W.2d at 365. The judgment is therefore reversed and remanded for the trial court to take evidence according to Golde's offer of proof to the extent such evidence is admissible.[9]

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.

[9] We are obliged to note that the respondent's brief is frequently vitriolic. Although counsel may find it difficult to maintain a decorous tenor when they believe their client has been the victim of inappropriate stratagems, there is no justification for abandoning civility in appellate advocacy.