526 S.E.2d 14

**Deborah HICKS, Appellant,**

v.

**Kenneth P. HICKS, Appellee.**

No. 25977.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 21, 1999.

Decided Dec. 8, 1999.

Dissenting and Concurring Opinion of
Justice Maynard Dec. 15, 1999.

Patricia Keller, Esq., Hussell & Keller, L.C., Huntington, West Virginia, Attorney for Appellant.

David J. Lockwood, Esq., Huntington, West Viriginia, Attorney for Appellee.

RISOVICH, Judge:

This is an appeal by Deborah Hicks (hereinafter "Ms. Hicks" or "Appellant"), from a final order of the Circuit Court of Wayne County affirming the Family Law Master's recommended order. Appellant filed a petition with the Family Law Master seeking to modify the final divorce order to receive additional child support from Kenneth Hicks (hereinafter "Mr. Hicks" or "Appellee"), her former husband. The parties differed regarding how the child support formula should be adjusted to take into consideration that Appellee is providing a home for the use of Appellant and her son. The Family Law Master recommended that the amount of $600.00 [1] be deducted from the final child support obligation as a straight deduction. Upon a timely filing of petition for review, the circuit court affirmed the recommended decision of the Family Law Master.

Appellant contends that the Family Law Master erred in deducting, dollar for dollar, the rental value of the home from the total child support obligation rather than include the rental value of the home as an adjustment to be factored into the child support calculation as either in kind income to Appellant or as an extraordinary expense on line 5-c of the child support worksheet. Appellant also contends that the Family Law Master erred in refusing to consider Appellee's new spouse's income in the child support obligation. We agree with Appellant's contention that the Family Law Master should have included the rental value of the home as in kind income to Appellant and, accordingly,

we reverse that part of the circuit court's final order. However, we find that the Family Law Master and circuit court committed no reversible error by not including the second wife's income in the calculation of child support.

## I. Background Facts

Appellee and Appellant were married in 1985 and were married for four and a half years. They divorced in 1990. One son was born of the marriage, Ken, Jr., who is now twelve years old. Pursuant to the property settlement agreement entered into in the original divorce proceeding, Appellant and Ken, Jr. live in the marital home incident to child support. The agreement provides that they may live in the house until April 13, 2000. The house is the separate property of Appellee. As part of the agreement, Appellee agreed to pay the mortgage payment on the house in the amount of $325.00 per month, however, that mortgage has since been paid off. Also as part of the original agreement, Appellee paid $360.00 per month in child support.

In October 1996, Appellant filed a petition for modification of child support. Appellant alleged that there had been a material change in circumstances in that Appellee now had much greater income, that it would be in the best interests of the child to increase the child support and that the child support formula would now indicate an amount in excess of fifteen percent.[2] The parties first entered into an agreed temporary order which continued the matter until income information and tax returns could be exchanged. The order temporarily increased child support to $700.00 per month. The parties were able to stipulate to their income and exchange other financial information.[3]

---

1. Appellee represented to the Family Law Master that he had consulted a realtor and was advised that the home would rent for $600.00 per month on the rental market.

2. West Virginia Code § 48A–1B–11 (1998), the child support guidelines in effect at the time the petition for modification was filed, provided that "[t]he provisions of a child support order may be modified if there is a substantial change of circumstances. If application of the guideline

would result in a new order that is more than fifteen percent different, then the circumstances are considered to be a substantial change."

3. Appellant is an administrative assistant for the Marshall University Foundation and has a gross income of $2,788.34 per month. Appellee is an attorney and has a gross income of $14,313.58 per month, which includes interest/dividend income and rental income. Appellant was credited with paying the child's health insurance premi-

The parties were not able to agree how the fair rental value of the marital home should be deducted from the child support obligation. The fair rental value of the home is stipulated at $600.00 per month. In a hearing before the Family Law Master, Appellant asserted that the fair rental value of the home should be deducted as an extraordinary adjustment on line 5–c of the child support worksheet. If the rental value would have been deducted as an extraordinary adjustment, the obligation would have been $1199.94 per month. Appellee asserted that the rental value of the home should be deducted from the total child support obligation, which was, in fact, what the Family Law Master did, and Appellant was awarded $704.85 per month in child support.

In addition to arguing that the Family Law Master and circuit court inappropriately calculated the child support obligation, Appellant also contends that some of Appellee's spouse's income should be considered in calculating child support. Tonya Hicks is Appellee's current wife. Tonya has been employed by Kenneth P. Hicks, L.C., since August 1990. Appellee is the sole stockholder in this legal corporation. At the time Appellant filed her petition for modification, Tonya received a $13,208.45 raise in income, while Appellee's income only increased $817.37. Appellant argues that Appellee funneled income to his new wife in order to lower his support obligation. The Family Law Master found that the disproportionate raise in income was suspicious, but declined to consider the issue. The Family Law Master filed her recommended order on June 9, 1998, and both parties filed petitions for review of that order with the circuit court. On August 24, 1998, the circuit court entered an order affirming the Family Law Master's recommended order. It is from this order that Appellant appeals.

um of $30.00 per month and Appellee was given credit for having an additional dependent child.

4. After calculating the total child support obligation of $1304.85, the Family Law Master deducted $600.00 from Appellee's final monthly child support obligation, thereby reducing Appellee's total obligation per month to only $704.85.

## II. Standard of Review

■ A recommended order of a family law master is reviewable by a circuit court pursuant to statute. See W.Va.Code §§ 48A–4–16 and –20 (1999). However, because the circuit court adopted the recommendations of the family law master, this Court applies the standard of review expressed in syllabus point one of Burnside v. Burnside, 194 W.Va. 263, 460 S.E.2d 264 (1995):

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

"This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo." Syl. Pt. 4, Burgess v. Porterfield, 196 W.Va. 178, 469 S.E.2d 114 (1996).

## III. Discussion

### A. Consideration of rental value of marital home in child support calculation

■ Appellant contends that the circuit court erred in affirming the Family Law Master's determination of the total child support obligation by deducting, dollar for dollar, the rental value of the home from the total child support obligation.[4] Instead, Appellant contends that the Family Law Master should have included the rental value of the home as an adjustment to be factored into the child support calculation as either in kind income to Appellant[5] or, in the alternative,

5. Appellant attached a worksheet for the computation of child support to her brief, which demonstrates that with in the in kind benefit of the rental value of the home included in determining the gross monthly income of Appellant, the child support calculation would have resulted in Appellee having a monthly child support obligation of $1299.23 per month, as opposed to the $704.85 per month actually ordered by the Fami-

as an extraordinary expense on line 5–c of the child support worksheet.[6]

Chapter 48A of the West Virginia Code provides for the enforcement of family obligations. West Virginia Code §§ 48A–1A–1 to –32 (1999) define the terms used by the West Virginia Legislature for the enforcement of these obligations. West Virginia Code §§ 48A–1B–1 to –17 (1999) provide the guidelines for awarding child support. Child support determinations have been reduced to a math calculation.[7] Guidelines for child support award amounts ensure greater uniformity for calculating child support and increase predictability for parents, children and other persons who are directly affected by child support orders.

West Virginia Code § 48A–1B–6 [8] sets forth the procedure for computing child support in sole custody cases. The statute also provides the worksheet to be followed in calculating child support. *See* W.Va.Code § 48A–1B–6(c). The worksheet determines the total child support obligation by combining the basic obligation with certain adjustments. Adjustments are allowable expenses or credits pertaining to the child for who the formula is being calculated. West Virginia Code § 48A–1B–6(a) and (b) specifically provide:

(a) For sole custody cases, the total child support obligation consists of the basis child support obligation plus the child's share of any unreimbursed health care expenses, work-related child care expenses and any other extraordinary expenses agreed to by the parents or ordered by the court less any extraordinary credits agreed to by the parents or ordered by the court.

(b) In a sole custody case, the total basic child support obligation is divided between the parents in proportion to their income. From this amount is subtracted the obligor's direct expenditures of any items which were added to the basis child support obligation to arrive at the total child support obligation.

West Virginia Code § 48A–1A–19(b)(4) (1998), the statute in effect at the time the Family Law Master and circuit court entered their respective orders,[9] defines "gross income" for the purposes of enforcing family obligations and calculating child support as "[e]xpense reimbursements or in kind payments such as business expense accounts, business credit accounts and tangible property such as automobiles and meals, to the extent that they provide the parent *with property or services he or she would otherwise have to provide." Id.* (emphasis added).

ly Law Master. *See* W.Va.Code § 48A–1B–6 (1999). The net result of the Family Law Master's error was the loss of $594.00 per month in child support for the benefit of the child.

6. Appellant attached another worksheet to her brief which demonstrates that including the rental value of the home as an adjustment to the basic obligation section of the child support worksheet (Line 5–c), the child support calculation would have resulted in Appellee having a monthly child support obligation of $1199.94 per month. *See* W.Va.Code § 48A–1B–6. The net result of the Family Law Master's error was the loss of $495.09 per month in child support for the benefit of the child.

7. In 1997, the West Virginia Legislature incorporated guidelines for calculating child support into the child support statutes. *See* W.Va.Code §§ 48A–1B–1 to –16 (1998). Before these guidelines were incorporated into the state code, they were found in 6 West Virginia Code of State Rules §§ 78–16–1 to –20 (1988). The guidelines incorporated into the state code, known as the income shares formula, was the formula ultimately used to calculate child support in this

case. These guidelines were again amended in 1998 by the Legislature, but no substantial changes were made at that time to the sections which are relevant to our inquiry.

8. West Virginia Code § 48A–1B–6 was amended in 1998. The amendment, effective May 20, 1999, made minor stylistic changes to the child support calculation worksheet included under sub-paragraph (c) of this code section and also changed the amount from $1400.00 to $1550.00 gross monthly income in regard to the non-custodial parent's ability to pay child support. This amendment does not affect the calculation of child support in this case.

9. West Virginia Code § 48A–1A–19(b)(4) was amended in 1998, effective May 20, 1999, and that amendment deleted "Expense reimbursements or" preceding "In" and added the proviso: "Provided, That reimbursement of actual expenses incurred and documented shall not be included as gross income." Such amendment does not change the holding in this case.

The definition of gross income clearly includes in kind payments to the extent that they provide a parent with property he or she would otherwise have to provide for himself or herself. Had the home not been provided by Appellee for the use and benefit of the child, Appellant would have had to provide a home for herself and the child, thereby paying either rent or mortgage. By not having to pay rent or a mortgage, Appellant clearly receives an in kind monthly payment of $600.00, the rental value of the home.

Although this issue has not been specifically addressed by this Court, a similar situation has been litigated in Florida. In *Thomas v. Thomas*, 712 So.2d 822 (Fla.Dist.Ct. App.1998), the District Court of Appeal of Florida, Second Circuit, found that when the child support obligee has the exclusive right to occupy the home to the exclusion of the child support obligor who could not claim rent, the value of the right to occupy the home should have been factored into the calculation of the obligor's child support. *Id.* at 823. The Florida court specifically found that "for the purposes of calculating child support, a party's gross income includes 'in kind payments to the extent that they reduce living expenses' . . . [and that] [t]hese include housing or housing expenses." *Id.* at 823–24, citing Fla. Stat. Ann. § 61.30(2)(a)13. (West 1997).

Clearly, the most appropriate procedure for factoring in the rental value of the home is to include the $600.00 in Appellant's gross monthly income. Accordingly, we hold that when the child support obligor provides a home for the benefit of the child and the child support obligee incident to child support, the rental value of the home should be factored into the child support formula, as found in West Virginia Code § 48A–1B–6 (1999), as in kind payments to be included in the child support obligee's gross income pursuant to West Virginia Code § 48A–1A–19(b)(4) (1999). The circuit court erroneously affirmed the Family Law Master's recommended decision with respect to the consideration of the rental value of the home.

### B. Consideration of Appellee's new spouse's income in child support calculation

Appellant also contends that the circuit court erroneously affirmed the Family Law Master's refusal to consider the income of Appellee's new spouse in determining the final child support obligation owed by Appellee. Appellant alleges the facts of this case clearly demonstrate that Appellee was intentionally hiding his income by funneling it through his current spouse, Tonya. Tonya has been employed by Kenneth P. Hicks, L.C., since August 1990. Appellee is the sole stockholder in this legal corporation with sole control over the salaries paid to staff. At the time Appellant filed her petition for modification, Tonya received a $13,208.45 raise in income, while Appellee's income only increased $817.37.

In contrast, Appellee asserts that the increase in salary to Tonya was the result of increased job duties. Shortly before the increase, Appellee had lost two very productive employees and as a result of this loss, Tonya was forced to take on additional duties, over and above her job as office manager. Additionally, Appellee asserts that his duties were not so drastically changed as to require a substantial salary increase. The Family Law Master noted that such an increase in salary seemed suspicious, but declined to consider the issue. The circuit court found in its final order that "[t]he present state of the law does not permit the Court to consider the spouse's income in calculation of the obligor's income for child support computation. Therefore, it is not a misapplication of the law, nor is it an abuse of discretion to disregard Tonya's income in computing child support."

Appellant relies on law from several jurisdictions, but primarily on the case of *Evjen v. Evjen*, 171 Wis.2d 677, 492 N.W.2d 361 (App. 1992) in support of her argument. In *Evjen*, the Court of Appeals of Wisconsin held that the portion of the wages paid to a father's current spouse by his closely held corporation was part of his gross monthly income for purposes of calculating child support. In *Evjen*, the court found no credible or reasonable inference that supported the need of the father's closely held corporation to hire the new spouse at an annual salary of $11,350.00 to perform tasks that previously had the cost the corporation about $2500.00 annually. *Id.* at 363–364. The *Evjen* court specifically

found that "a family court is authorized to pierce the corporate shield if it is convinced that obligor's intent is to avoid financial obligations arising from the dissolution of the marriage relationship." *Id.* at 364.[10]

However, West Virginia Code § 48A–1A–19(d)(1) (1999) specifically states that "gross income" does not include "[i]ncome received by other household members such as a new spouse." The limited record before us does not support a change in our law as suggested by Appellant. Accordingly, the circuit court did not abuse its discretion in affirming the Family Law Master's refusal to consider the income of Appellee's new spouse in the child support calculation.

#### IV. Conclusion

Based upon the foregoing, we affirm in part, and remand in part, the decision of the Circuit Court of Wayne County and remand this case with directions that an order be entered consistent with our holding.

Affirmed in part; reversed in part; and remanded with directions.

Justice SCOTT did not participate in the decision of the Court.

MAYNARD, Justice, concurring in part and dissenting in part.

(Filed Dec. 15, 1999)

I agree with the majority that the circuit court did not abuse its discretion in affirming the Family Law Master's refusal to consider the income of the appellee's new spouse in the child support calculation. Therefore, I concur with that portion of the opinion. However, I disagree with the majority that the rental value of the appellee's home should be factored into the child support formula as in kind payments to be included in the appellant's gross income.

The child support obligation in this case is $1,304.85 per month. The appellee pays $704.85 per month in child support, and he has agreed to allow his son and the appellant to live in the marital home incident to child support. The fair rental value of the home is stipulated at $600 per month. The Family Law Master and the circuit court looked at this situation and realized that, minus the agreement as to the home, the appellant would be entitled to $1,304.85 per month in child support, but would also have to bear rental or housing costs which, in a comparable home, would amount to at least $600 per month. Therefore, the decision of the Family Law Master to deduct the rental value of the home from the total child support obligation essentially places the appellant in the same position she would be in if the home were not an issue. The appellant gets the benefit of the home, and the appellee gets the benefit of the reduced child support obligation.

It seems to me that the Family Law Master's solution conforms with the dictates of common sense and fairness. The majority, on the other hand, unduly complicates the issue to reach a less equitable solution. Accordingly, I dissent to the majority's reversal of the circuit court on the issue of how to treat the rental value of the appellee's home.

I am authorized to state that Justice McGRAW joins me in this dissent.

---

10. The court in *Evjen* specifically noted that Wisconsin Department of Health and Social Services rules on the child support percentage of income standard provide that income which has been diverted to avoid paying child support may considered income for the purpose of calculating support. *Id.* at 364. We have no similar provision in our state rules or child support statutes.