# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TRACY LEMASTER,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-229**          (Fam. Ct. Harrison Cnty. Case No. FC-17-2008-D-295)

**COLEEN LEMASTER,**
**Petitioner Below, Respondent**

**FILED**

**May 16, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Tracy LeMaster ("Husband") appeals the Family Court of Harrison County's May 8, 2024, order denying his petition to modify spousal support, granting Respondent Coleen LeMaster's ("Wife") petition to increase spousal support, and awarding Wife attorney's fees. Wife filed a response in support of the family court's decision.[1] Husband filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision, but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the family court's decision is affirmed, in part, and vacated, in part, and this matter is remanded to the family court with directions as set forth herein.

Husband and Wife were married on March 8, 1995, and divorced by order entered on February 26, 2009. No children were born of the marriage. The parties entered into a separation agreement dated February 9, 2009, which resolved all equitable distribution issues and awarded Wife permanent monthly spousal support equal to twelve percent of Husband's monthly gross income. The separation agreement was adopted by the family court and is incorporated into the final divorce order. Husband was not employed at the time of the parties' divorce, but provisions were made for Husband to continue to pay certain expenses on Wife's behalf in lieu of spousal support until he found employment.

On March 9, 2020, Wife filed a petition for contempt wherein she alleged that Husband failed to pay spousal support pursuant to the agreement. At the hearing on Wife's petition, the parties agreed that Husband would pay Wife $55,000 for past due spousal

---

[1] Tracy LeMaster is represented by Madison P. Messinger, Esq. Coleen LeMaster is represented by Larry W. Chafin, Esq., and Debra V. Chafin, Esq.

1

support in a lump sum within thirty days and that spousal support would be modified to $600 per month. The new agreement was reflected in a final order entered on July 9, 2020. The order also required the parties to exchange annual income tax returns by email. In this order, the family court noted that Husband's annual income was approximately $75,000 at that time.

On October 6, 2020, Wife filed another petition for contempt alleging that Husband failed to pay her the $55,000 lump sum payment or pay her $600 monthly since the entry of the July 9, 2020, order. After Husband was served the rule to show cause, he paid all obligations and the petition for contempt was dismissed on November 16, 2020.

On August 26, 2022, Husband filed a petition to modify spousal support alleging that there had been a change in circumstances to warrant modification. Specifically, he alleged that his income had decreased, and Wife's income had increased.

On February 16, 2023, Wife filed a motion to increase Husband's spousal support obligation, citing changes in her health, replacement of her car, and Husband's monetary status in support of her motion. On February 28, 2023, the family court held an initial hearing on Husband's petition for modification and Wife's motion.[2] On April 13, 2023, Wife filed a motion to compel discovery. On April 27, 2023, Husband sought additional time to respond to discovery because he had been hospitalized.[3] On June 26, 2023, Wife filed a second motion to compel discovery.

On August 7, 2023, Wife filed another petition for contempt alleging that Husband had not paid spousal support since January of 2023 and that Husband had transferred 90% of his business to his new spouse in 2021.

A final hearing was scheduled for August 23, 2023, but it was converted to a discovery compliance hearing due to Husband's noncompliance with Wife's discovery requests. During the discovery process, Wife requested that the family court "pierce the corporate veil" because Husband had transferred nearly all his property to his new spouse. The family court considered Wife's motion to "pierce the corporate veil," but it did not

---

[2] The delay in setting a hearing on Husband's petition to modify was due to Husband's failure to serve Wife.

[3] Husband was involved in a domestic dispute that resulted in law enforcement involvement. As a result, Husband alleges that he incurred approximately $1.4 million dollars in medical bills. Further, Husband faced criminal charges as a result of the incident and has incurred $131,000 in attorney's fees for his defense. Wife alleged that Husband's attorney's fees related to that matter were paid by his new spouse and his mother.

2

rule on the motion because Wife opted to move forward without a separate hearing on that issue.[4]

At the August 23, 2023, hearing, Husband testified about his medical bills and stated that, in 2021, he began divesting his majority interest in LeMaster, Inc. (a welding business) through gifts of corporate shares to his new spouse so that he would be able to obtain government contracts designated for minority business owners. Husband admitted that he, eventually, transferred all his interests in the corporation, along with all the assets owned by the corporation, including real estate and vehicles, to his new spouse and/or her solely owned companies. Husband testified that the transfers of his property and assets to his new spouse were made with no consideration. He further testified that the commercial real estate was on the market for $1.2 million, but $798,000 was owed on the property. The family court found that while there was no proof that Husband's asset transfers to his new spouse were to avoid his spousal support obligation, the assertion that Husband had no income was "the same as the fiction that transfers of Husband's assets to [new spouse]'s corporations were."[5]

The family court further found that in December of 2021, eight months prior to Husband filing his petition for modification, he and his new spouse sold real estate in West Virginia for which they received $91,000 in net proceeds, all of which they deposited in the new spouse's separate bank account.[6] A few months later, the new spouse paid $97,000 out of that same account to purchase a $400,000 motor home, in her name only, which she and Husband use as their primary residence. The family court found that Husband "has

_____

[4] Wife refers to "pierc[ing] the corporate veil" in her motion to compel. Piercing the corporate veil is a legal theory generally used to assert that a debt or liability of a legal entity may create personal liability upon owners of the entity. *See, e.g., Laya v. Erin Homes, Inc,* 177 W. Va. 343, 352 S.E.2d 93 (1986) (corporations); W. Va. Code § 31B-3-303 (limited liability companies). The Supreme Court of Appeals of West Virginia ("SCAWV") has previously applied this concept in family law, holding that "a family court is authorized to pierce the corporate shield if it is convinced that obligor's intent is to avoid financial obligations arising from the dissolution of the marriage relationship." *Hicks v. Hicks*, 206 W. Va. 492, 497, 526 S.E.2d 14, 19 (1999) (citation omitted). In her brief to this Court, Wife instead suggested a transfer-in-fraud-of-creditors type analysis.

[5] The family court states in its order that Husband's new spouse is the sole owner of other entities as well. Due to Husband's failure to provide financial information about these companies, the family court was unclear as to where the assets to fund the other companies came from but stated that "[i]t is reasonable to assume that Husband's assets did not dissipate into thin air but have been transferred into [new spouse's entities]."

[6] The new spouse's bank account is payable to Husband upon her death.

arranged his finances so that he has income of $0.00 per month," that "Husband did not ever claim that he had limited access to the assets and funds that formerly were his but are now held [by companies] owned solely by [Husband's new spouse]", and that "Husband has the ability to pay his spousal support obligation from all of the assets he has transferred to [new spouse's] solely owned [companies]."

The family court heard Wife's petition for contempt on or about October 17, 2023. At that hearing, the family court found that Wife provided proof of a bank account owned by Husband and his new spouse that contained more than adequate funds to pay Wife the spousal support owed. The family court held Husband in contempt for his failure to pay his spousal support obligation as ordered. To allow Husband to purge his contempt, the family court ordered a payment schedule and awarded Wife $1,250 in attorney's fees.

The family court conducted a hearing on Husband's petition to modify on March 21, 2024, and issued its final order denying the same on May 8, 2024. In this order, the family court also addressed and analyzed the spousal support factors found in West Virginia Code § 48-6-301(b) (2018).[7] Of relevance to this appeal, the family court afforded great weight to Husband's divestiture of his assets, the significant amount of legal fees paid on his behalf to his private attorneys, and his lack of credibility during his testimony about his disclosed income and assets. The family court, however, granted Wife's counterpetition to modify Husband's spousal support obligation, increasing Husband's spousal support obligation from $600 per month to $750 per month, effective June 1, 2024. Further, the family court ordered Husband to pay Wife $6,198.15 for unpaid spousal support and $11,290 in attorney's fees which she incurred as a result of filing two petitions for contempt against Husband for his failure to pay spousal support and defending against Husband's meritless petition for modification. It is from the May 8, 2024, order that Husband now appeals.

For these matters, we use the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

---

[7] West Virginia Code § 48-6-301(b) (2018) provides a list of twenty factors the family court must consider in an award for spousal support.

Husband raised five assignments of error in his appeal. Several assignments of error are closely related, which we will consolidate. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (allowing consolidation of related assignments of error).

In his first, second, third, and fourth assignments of error, Husband asserted that the family court erred in multiple ways in its analysis and calculation of spousal support. Specifically, he states that the family court erroneously considered both the financial contributions from his family for his criminal defense as well as his new spouse's income. In doing so, Husband argues that the family court erroneously increased his spousal support and failed to make specific findings of fact regarding the needs of both parties. We disagree.

Our state's highest court has consistently held, "as long as the family court fully considers the mandatory statutory factors, and its award of spousal support is within the parameters of reasonableness, this Court should not disturb the award on appeal." *Mulugeta v. Misailidis*, 239 W. Va. 404, 410, 801 S.E.2d 282, 288 (2017) (citation omitted). Further, West Virginia Code § 48-6-301(b)(20) allows family courts to consider, "[a]ny other factors as the court determines necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support and separate maintenance." Moreover, it is within the sole province of the family court, as factfinder, to decide issues of credibility and this Court will not reweigh the evidence simply because it may have viewed the evidence differently. *See Mulugeta*, 239 W. Va. at 408-09, 801 S.E.2d at 286-287. Here, the family court weighed all relevant spousal support factors for which evidence was provided but gave significant weight to Husband's divestiture of his assets, the large sums paid on his behalf to his criminal defense attorneys, and his refusal to comply with Wife's discovery requests.[8] The family court also found that Husband's testimony was not credible

---

[8] We are instructed by the doctrine that a party should not benefit from deception or from an ambiguity that party created. A party who does not cooperate in a proceeding cannot complain about the result. *See Young v. Young*, 194 W. Va. 405, 460 S.E.2d 651 (1995) (per curiam). Here, Husband's evidence provided to the family court on his ability to pay was deficient at best. Husband was asked to provide a monthly budget to properly calculate his ability to pay. Husband submitted a document labeled "Our Monthly Expenses" which contained expenses for both Husband *and* his new spouse. Moreover, Husband failed to submit evidence of the alleged $1.4 million medical debt other than an explanation of benefits from his health insurance carrier. Additionally, Husband failed to provide the family court with evidence regarding a bill the provider was asserting as due and owing directly by the insured, any monthly payments made toward the alleged medical debt, or how much more medical expense he believed he would personally incur as a result of the incident. Instead, Husband informed the family court that he intended to file bankruptcy, although he had not taken any steps to do so. We find no error in the family

given his numerous transfers of his assets, in their entirety, to his new spouse and/or her solely owned companies; his failure to disclose income that he was receiving for consulting services; and his misleading monthly budget provided to the family court in which he claimed vehicle insurance expenses for vehicles that were not owned by him. The family court also found that Husband was eligible to draw social security retirement benefits in June of 2024. However, he testified that he intended on waiting, even though his testimony before the court was that he had no income, and his social security payment would be over $2,000 per month.

Moreover, the family court found that the substantial assets Husband transferred to his new spouse were still within his effective control and that Husband had purposefully arranged his finances to appear as though he had no income. Given the record on appeal, we cannot find that the family court abused its discretion or committed clear error; therefore, we will not disturb the family court's decisions with respect to Husband's first four assignments of error.

In his fifth assignment of error, Husband contends that the family court abused its discretion in awarding Wife attorney's fees by failing to properly analyze the factors for awarding attorney's fees. Upon review, we agree. While the family court had discretion to award attorney's fees in this case and may reach the same conclusion on remand, the family court is required to conduct the requisite analysis under *Banker* when awarding attorney's fees in divorce matters. *See* Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996).[9] Here, the family court's order contained only three conclusory sentences addressing attorney's fees and failed to include any analysis. Therefore, we vacate the family court's order as to the award of attorney's fees and remand on Husband's fifth assignment of error with directions to issue a new order containing sufficient analysis under *Banker*.

---

court's decision to rule in favor of Wife when Husband did not fully cooperate in establishing his ability to pay in the proceedings below.

[9] Syl. Pt. 4 of *Banker* states:

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Further, on August 13, 2024, Wife filed a motion for attorney's fees with this Court, seeking attorney's fees incurred to prosecute this appeal. West Virginia Code § 48-1-305(b) (2001) permits attorney's fees and costs to be awarded on appeal, stating, in part, "[i]f an appeal is taken or an intention to appeal is stated, the court may further order either party to pay attorney's fees and costs on appeal." On this issue, the SCAWV has previously remanded the issue of appellate attorney's fees, directing that "[u]pon remand, it must be determined whether the defendant is entitled to have the reasonable cost of her attorney's fees and expert witness fees, *including the cost of prosecuting this appeal*, but only after considering all the appropriate factors, including the fault of the plaintiff." *Banker v. Banker*, 196 W. Va. 535, 550, 474 S.E.2d 465, 480 (1996) (emphasis added); *see also* Syl. Pt. 2, in part, *Quicken Loans, Inc. v. Brown*, 236 W. Va. 12, 777 S.E.2d 581 (2014) ("Pursuant to Rule 24 of the West Virginia Rules of Appellate Procedure, attorney fees and costs may be awarded for appellate proceedings by either this Court or by the trial court following the direction of this Court."). Given our decision to vacate the family court's award of attorney fees and to remand the issue of attorney's fees to the family court, we hereby defer the decision of whether Wife is entitled to attorney's fees incurred in the prosecution of this appeal. Upon remand, the family court is instructed to consider whether Wife is entitled to attorney fees for prosecuting her case, below and on appeal, pursuant to *Banker*.

Accordingly, we affirm, in part, and vacate, in part, the family court's May 8, 2024, final order, and remand to the family court with directions to issue a new order that includes a *Banker* analysis on the issue of attorney's fees.

Affirmed, in part, Vacated, in part, and Remanded with directions.

**ISSUED:** May 16, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White