Alexandra MUCEK d/b/a "Alakai Hotel & Suites,"
Plaintiff-Respondent,

v.

NATIONWIDE COMMUNICATIONS, INC., Defendant-
Appellant.

Court of Appeals

*No. 00–3039. Submitted on briefs May 4, 2001.—Decided
February 21, 2002.*

2002 WI App 60

(Also reported in 643 N.W.2d 98.)

428

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles E. Pellino, Jr.* and *Susan C. Blesener* of *Pellino, Rosen, Mowris & Kirkhuff, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey M. Blessinger* of *Cross, Jenks, Mercer and Maffei*, Baraboo.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Nationwide Communications, Inc. (NCI) appeals an order of the trial court

denying its motion to withdraw certain admissions. NCI also challenges evidentiary rulings and the court's failure to reduce the jury's punitive damages award. For the reasons that follow, we affirm.

### Background

¶ 2. Alexandra Mucek is the owner of Alakai Hotel & Suites in Wisconsin Dells, Wisconsin. In January of 1997, Mucek entered into a contract for telephone service with NCI, a long-distance service provider. In April of 1997, Mucek took action to terminate her contract with NCI. Thereafter, NCI sued Mucek in Michigan, alleging breach of contract. The suit was ultimately dismissed by a Michigan court on jurisdictional grounds.

¶ 3. Mucek filed this suit against NCI in January of 1999, alleging various causes of action for fraud and misrepresentation, as well as breach of contract, negligent supervision, malicious prosecution, and abuse of process. Mucek sought both compensatory and punitive damages.

¶ 4. On March 15, 1999, Attorney Mark Alberg filed a notice of retainer indicating he was representing NCI and on that same day filed an answer. On May 20, a request for a substitution of counsel for NCI was filed. The court signed the requested order, substituting Attorney Harry Hertel for Attorney Alberg. The record does not indicate the reason for this substitution.

¶ 5. On June 10, 1999, the court issued an order directing that discovery be completed by December 31, 1999. On November 19, 1999, Mucek sent interrogatories and a request to produce documents to NCI.

¶ 6. On December 28, 1999, attorneys for both parties filed a stipulation, approved by the trial court, extending the discovery date until January 7, 2000. On

February 2, 2000, Mucek filed a motion to compel discovery because NCI failed to respond to her interrogatories and request to produce. At a March 15 hearing on Mucek's motion to compel discovery, the trial court orally granted Mucek's motion and gave NCI until March 29, 2000, to respond. Previously, on February 22, the trial court had set trial for August 8, 2000, and extended the deadline for discovery to July 31, 2000.

¶ 7. On March 20, 2000, NCI's attorney, Harry Hertel, filed a motion to withdraw. In a supporting affidavit, the attorney stated that NCI had consistently failed to cooperate with counsel regarding discovery and would not even return his phone calls. The attorney noted that he had appeared at three hearings on motions to compel discovery against NCI in three separate cases. The motion to withdraw was granted.

¶ 8. On March 22, 2000, the trial court issued a written order granting Mucek's motion to compel, which, consistent with the oral order, gave NCI until March 29 to comply. In this order, the court warned NCI that the court would consider a motion to strike NCI's answer to the complaint, including NCI's denial of liability, if NCI failed to comply.

¶ 9. On April 3, counsel for Mucek filed a motion to strike NCI's answer along with a supporting affidavit stating that he had received no response to the interrogatories or request for documents from NCI. The motion included a notice of hearing on April 10.

¶ 10. NCI failed to respond to discovery, and a hearing was held on April 10, 2000, to address Mucek's motion to strike NCI's answer. NCI failed to appear, and the court orally granted the motion. A written order to

this effect was issued on April 24, 2000. This order found NCI 100% liable and indicated the only remaining issue was damages.

¶ 11. On June 15, 2000, Mucek mailed to NCI a first request for admissions and a second set of interrogatories. Because there was no attorney of record, Mucek served the request on Robert Miller, the general manager for NCI. NCI failed to respond to the request for admissions within the statutory thirty-day time limit and, by statute, the matters asserted in the request were deemed admitted. *See* WIS. STAT. § 804.11(1)(b) (1997–98).[1]

¶ 12. On July 24, 2000, Attorney Charles Pellino was retained by NCI and filed a notice of retainer. On August 3, Attorney Pellino filed a motion to extend the time for answering the request for admissions or, alternatively, to withdraw the admissions. In a supporting affidavit, Attorney Pellino stated that his preparation was hampered by the fact that NCI was involved in three cases that were "tightly scheduled" and that he had not yet received all the documents filed in this matter, including the request for admissions.

¶ 13. The trial court denied that motion orally during a hearing on August 3. For the most part, the arguments of the parties during this hearing were not recorded. Instead, the court went on the record at the end of the hearing to summarize and make its ruling. The recorded comments of the trial court and the attorneys make it apparent that NCI did not provide evidence at this hearing, or prior to it, showing that its failure to respond to the request for admissions was anything more than a continuation of its pattern of

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

discovery abuse. The comments also show that NCI's new counsel asserted that the failure to respond was due to·a "mix-up." Mucek's counsel responded: "There is no statement by anyone from NCI or from this hidden law firm which, supposedly, was part of the mix-up. There is just vague allegations of such."[2] On August 4, 2000, the judge signed a written order denying NCI's requests for an adjournment, to extend the time to respond to admissions, and to withdraw admissions.[3]

¶ 14. On the first day of trial, August 8, 2000, NCI filed a response to Mucek's first request.for admissions

---

[2] NCI submitted an affidavit from its general manager, Robert Miller, on the first day of trial indicating that after Attorney Hertel's withdrawal, but prior to NCI's retainer of Attorney Pellino, NCI retained the firm of Clifford & Raihala. Miller alleged that he received Mucek's first request for admissions and second set of interrogatories on June 19 and "believe[d]" he answered them and sent them by facsimile to Clifford & Raihala prior to July 19. At trial, Mucek submitted an affidavit from John Raihala. Raihala asserted that in early May 2000, he agreed to represent NCI. However, because of problems experienced by NCI's prior counsel, Raihala's law firm's retainer agreement required NCI to pay its monthly bills promptly. Following Raihala's first month of work, NCI breached the agreement and Raihala wrote to NCI advising that his law firm was withdrawing as NCI's attorneys. NCI sought and obtained another chance, promising to send payment, but NCI failed to follow through and Clifford & Raihala withdrew as counsel on June 30, 2000. Raihala stated that he never received from Miller or any other NCI employee any requests for admission or any other discovery. Raihala stated he reviewed the activity report produced by his firm's facsimile machine between May 1, 2000, and August 1, 2000, and found just one facsimile from NCI dated May 3, 2000.

[3] It appears NCI's counsel orally requested an adjournment of the trial during the August 3 hearing.

and second set of interrogatories. NCI's counsel asked the court to reconsider its decision to strike NCI's answer to the complaint and renewed the motion to withdraw the admissions. Mucek's counsel's responses included the following:

> Up until approximately four days ago, NCI has done nothing to cooperate with getting plaintiff discovery or any facts regarding this case . . . . Turning our attention to the requests for admission, again, [the] Court needs to look at the totality of the circumstances as to what happened and what was going on in this case. Now, counsel drops, this morning, an affidavit with all these factual allegations as to why they should be relieved of these requests for admissions. We're only 14 days late, come on, close enough . . . . First of all, keep in mind plaintiffs have been trying for now almost 2 years to get discovery, to get factual information. And, most importantly in this case, to get documents which would document exactly what contracts were altered, what contracts were forged.

The trial court denied NCI's request that it reverse its earlier rulings, again relying on NCI's history of abuse and concluding: "They have simply played games with the Court."

¶ 15. In connection with the damages issue at trial, NCI filed a motion in limine seeking exclusion of testimony from two other hotel owners in the Wisconsin Dells area, who had similarly been sued by NCI for breach of contract, on the basis that the testimony constituted inadmissible other acts evidence. The trial court denied that motion, stating that punitive damages are designed to punish egregious conduct and, to the extent that NCI was engaging in a course of egregious conduct, the testimony was relevant.

¶ 16. At trial, Mucek testified that sometime in late 1996 or early 1997, James Donker, a sales representative with NCI, approached her about changing her long-distance telephone service. Donker presented a standard form, carbonless, duplicate contract (containing a top white copy and a bottom yellow copy). The contract provided on the back that it would remain in effect for sixty months. Because Mucek objected to entering into a five-year contract with NCI, Donker crossed out the sixty-month language and changed it to twelve months. On the front of the contract, Donker also wrote: "You may void this contract at any time and for any reason." Both Donker and Mucek initialed the changes. Donker took the white copy and Mucek kept the yellow copy.

¶ 17. Mucek testified that after her hotel customers complained about being overcharged for long-distance calls, she decided to terminate the contract with NCI. She said that NCI sued her in Michigan for breach of contract and, in the course of that litigation, NCI produced a contract that was different from the one she had signed. Although her signature was the same on the contract NCI produced, the language making the contract voidable at any time, handwritten at the bottom of the contract by Donker, was missing. Additionally, the changes made to the back of Mucek's copy of the contract regarding the sixty-month term were also missing from the NCI copy. Finally, a paragraph was inserted on the back page of NCI's copy that stated the agreement would be governed and construed under the laws of the State of Michigan.

¶ 18. The parties stipulated that Mucek paid lawyers in Michigan $4350 to defend the suit brought by NCI. Mucek testified that the suit in Michigan was ultimately dismissed.

¶ 19. Mucek then introduced the testimony of Angie Tylka and Mary Maniak, both hotel owners in the Wisconsin Dells area. Both Tylka and Maniak testified that they too signed contracts with NCI for long-distance telephone services after being approached by Donker. Both women also objected to the five-year terms in their respective contracts, and Donker modified the contracts by adding language indicating that the contracts could be voided at any time.

¶ 20. When Tylka and Maniak terminated their contracts with NCI prior to the expiration of five years, NCI sued both for breach of contract. Tylka testified that the lawsuit against her was eventually dropped. Maniak testified that NCI maintained the lawsuit against her even after learning of Donker's changes to the contract, arguing that Donker was not authorized to make those changes. Maniak also testified that after paying a lawyer in Michigan $4000, she gave up defense of the suit because she could not afford to continue it. Maniak instead decided to remain an NCI customer for the contract term.

¶ 21. Richard Makens then testified on behalf of NCI. Makens is the president of NCI. Makens testified that NCI uses a five-year contract in order to recoup money initially spent on customer sign-up bonuses and equipment installation. Makens stated that Donker did not have authority to alter the contracts by making them voidable at any time. Makens testified that NCI brought suit against Mucek because she refused to return to NCI and because NCI had lost as many as ten hotels as customers in a thirty-day period. NCI wanted to send a message to the customers in order to "stem the tide."

¶ 22. Makens also testified that he is the one to approve all contracts on behalf of NCI, and he never

saw any contracts with handwritten language added making the contracts voidable for any reason. He stated that the contracts that were given to the lawyers who initiated the lawsuits against Mucek, Tylka, and Maniak did not contain any handwritten notations; rather, they were the standard form contracts. Makens also testified that when NCI learned about the language Donker inserted on Mucek's contract, it did not drop the suit against her. Rather, the court ultimately dismissed the suit on jurisdictional grounds.

¶ 23. Additional facts will be set forth below where they are pertinent to the analysis.

### *Discussion*

#### A. *Withdrawal of the Admissions*

¶ 24. NCI does not suggest that the trial court's order striking its answer to the complaint and imposing 100% liability was erroneous. Nor does NCI dispute that when it failed to respond to Mucek's request for admissions, the assertions made in Mucek's request were deemed admitted. Rather, NCI argues that the trial court erroneously exercised its discretion when it denied NCI's motion to withdraw the admissions.

¶ 25. The decision to allow relief from the effect of an admission is within the trial court's discretion. *Schmid v. Olsen*, 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983). We will uphold a trial court's discretionary act if the court examined the relevant facts, applied a proper standard of law, and, demonstrating a rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). At the same time, if a trial court fails

to adequately set forth its reasoning, we may independently review the record to determine if it provides a basis for the court's exercise of discretion. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).

¶ 26. When a party fails to respond to a request for an admission within thirty days of service, or within a shorter or longer time period set by the court, the matter is admitted. Wis. Stat. § 804.11(1)(b). A matter admitted is conclusively established unless the court permits withdrawal. Wis. Stat. § 804.11(2). A court's authority to permit withdrawal is constrained by the following language found in § 804.11(2):

> The court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits.

Thus, the statute provides that a court "may" permit withdrawal or amendment only if "the merits of the action will be subserved" and if the party who benefits from the admission "fails to satisfy the court that withdrawal . . . will prejudice" the benefiting party.

¶ 27. It is evident that the trial court in this case exercised its discretion to deny withdrawal under the view that Mucek had met her burden of showing prejudice.[4] Furthermore, the trial court's assessment of

---

[4] The dissent asserts that the record shows the circuit court improperly placed the burden on NCI to show that Mucek was not prejudiced. Dissent at ¶ 59. We disagree. Although the arguments of counsel at the August 3 hearing were, for the most part, not recorded, it appears from the circuit court's comment that the court heard a prejudice argument from Mucek's coun-

prejudice took account of NCI's ongoing failure to cooperate with discovery. Five days prior to trial, during the court's oral ruling denying NCI's request to adjourn the trial and extend the time for discovery (including the time to respond to Mucek's request for admissions), the court noted that one prior counsel for NCI withdrew because NCI failed to cooperate with discovery. The court went on to say:

> The defendants, to date, have failed to comply with discovery. They have taken no action, nor entered any appearance or been heard from, as far as the court file indicates, since [Attorney] Hertel withdrew on March 28th, excepting from that the subsequent proceedings brought by [Mucek's counsel] for the default judgment against them. Rarely have I really seen such egregious

sel and found it persuasive. (Mucek's counsel had opposed NCI's pending motions, presumably including NCI's request for withdrawal of admissions, based on "the history of the case.") Other comments by the circuit court indicating that it found NCI's arguments unpersuasive do not show that the court wrongly placed the burden of showing prejudice on NCI. Moreover, the burden at issue is plainly spelled out in the statute under which NCI brought its motion, WIS. STAT. § 804.11(2). The burden is on the appellant to demonstrate that the trial court erred, *Seltrecht v. Bremer*, 214 Wis. 2d 110, 125, 571 N.W.2d 686 (Ct. App. 1997), and NCI has failed to show that the circuit court applied an erroneous legal standard.

Further, the manner in which we resolve this issue makes it unnecessary to scrutinize whether NCI met its burden of showing that the merits of the case would be subserved by allowing withdrawal of the admissions. Federal courts have held that the party making the admission must show that presentation of the merits will be subserved by withdrawal and that this inquiry involves consideration of whether the admission is contrary to the record in the case. *Simien v. Chem. Waste Mgmt., Inc.*, 30 F. Supp. 2d 939, 941–42 (W.D. La. 1998).

conduct on the part of a defendant and to come in at the last moment and say the other side is not prejudiced and we should be able to essentially reopen this matter simply doesn't carry any weight with me. I do agree with [Mucek's counsel] that the affidavit submitted [by NCI's counsel] sets forth no basis upon which – first hand basis upon which defendant explains the conduct and lack of performance according to the procedural rules of this case and the State.

¶ 28. NCI complains that the trial court's application of WIS. STAT. § 804.11 involved an incorrect legal standard. NCI views the prejudice question as simply whether Mucek was worse off because she lost a couple weeks of preparation time just prior to trial. NCI argues that this was the only loss attributable to its failure to respond to admissions and that it had already been separately punished for its failure to comply with discovery. We disagree. For the reasons that follow, a trial court may consider a party's history of discovery abuse when deciding whether to permit withdrawal or amendment of admissions, both when determining prejudice under § 804.11(2) and when otherwise exercising the court's authority to control the orderly and prompt processing of a case.

¶ 29. We first address prejudice under WIS. STAT. § 804.11(2). The construction of a statute is a question of law we review *de novo*. *State v. Irish*, 210 Wis. 2d 107, 110, 565 N.W.2d 161 (Ct. App. 1997). The language in § 804.11(2) that we interpret was adopted from and is nearly identical to its counterpart provision in Rule 36(b) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 36;[5] *Bank of Two Rivers v. Zimmer*,

---

[5] FEDERAL R. CIV. P. 36(b) reads in pertinent part:

112 Wis. 2d 624, 630, 334 N.W.2d 230 (1983). Accordingly, we may look to federal case law for guidance in our analysis. *State v. Evans*, 2000 WI App 178, ¶ 8 n.2, 238 Wis. 2d 411, 617 N.W.2d 220 ("[W]here a state rule mirrors the federal rule, we consider federal cases interpreting the rule to be persuasive authority.").

¶ 30. We find no Wisconsin case defining "prejudice" in this context, but it is commonly understood to mean injury, damage, or detriment. *See City of Madison v. Lange*, 140 Wis. 2d 1, 7, 408 N.W.2d 763 (Ct. App. 1987). Federal cases explain that the prejudice contemplated by this statute is not simply that a party would be worse off without the admissions. *See ADM Agri-Indus., Ltd. v. Harvey*, 200 F.R.D. 467, 471 (M.D. Ala. 2001); *see also Bergemann v. United States*, 820 F.2d 1117, 1121 (10th Cir. 1987) ("The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth."). Rather, the party benefiting from the admission must show prejudice in addition to the inherent consequence that the party will now have to prove something that would have been deemed conclusively established if the opposing party were held to its admissions. That additional harm is present here.

■

¶ 31. The purpose of the admissions process "is to expedite trial by establishing certain material facts as true . . . thus narrowing the range of issues for trial." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245

---

Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

(9th Cir. 1981). In situations where parties fail to respond to requests for admissions, there is a difference between those cases in which a party has cooperated with discovery and those cases, like this one, in which a party has failed to cooperate throughout the pendency of the case. A party's ongoing failure to provide documents and information will frequently magnify the importance of requests for admissions precisely because the requesting party has already been deprived of requested information and is all the more dependent on admissions to identify what is actually in dispute. This proposition is implicitly recognized by several courts which have considered a pattern of discovery abuse when upholding or addressing the denial of a request to withdraw admissions.[6]

[6] *E.g., United States v. Kenealy*, 646 F.2d 699, 702–03 (1st Cir. 1981) (in affirming trial court's denial of request to withdraw admissions, reviewing court stated: "Given appellants' opaque, generalized, and tardy denials, . . . and their incredibly cavalier conduct in this litigation, we decline to tamper with the district court's action, which was well within its discretion."); *ADM Agri-Indus., Ltd. v. Harvey*, 200 F.R.D. 467, 471 (M.D. Ala. 2001) (in denying request to withdraw admissions, court stated: "Counter-balancing [the first prong of the test], however, is the problem that litigation on the merits is itself impaired by [the defendant's] pattern of uncooperativeness with the discovery schedule and court orders, and the fact that the court has no way of knowing whether [the defendant's] lack of cooperation is motivated by a simple desire to delay the prosecution of [the plaintiff's] case on the merits."); *Cleveland Trust Co. v. Willis*, 485 N.E.2d 1052, 1053–54 (Ohio 1985) (in affirming trial court's denial of request to withdraw admissions, court considered party's history of failing to cooperate with discovery); *U.S. Clip Corp. v. McThal, Inc.*, 729 S.W.2d 658, 660 (Mo. Ct. App. 1987) (in affirming trial court's denial of request to withdraw admis-

¶ 32. In this case, NCI's complete failure to cooperate by not responding to interrogatories or requests for documents meant that its failure to respond to requests for admissions left Mucek in the dark regarding what exactly NCI was willing to admit regarding, among other things, NCI's interaction with its employee Donker, its general level of sales and net worth, and its ongoing practices. No doubt NCI would have denied several of the assertions contained in the request for admissions, but Mucek could not know which items NCI might admit if it made a good faith effort to respond to the requests.[7] When NCI first provided

---

sions, court observed: "Here there was a long history of dilatory tactics by defendant which the trial court noted in its judgment . . . .").

[7] Mucek's requested admissions included the following:

**REQUEST NO. 1:** That attached hereto as Exhibit "A" is a true and correct copy of the actual "Long Distance/Operator Services Agreement" (hereinafter "Actual Contract") entered into between plaintiff and defendant, which contains handwritten modifications by NCI's authorized agent, James Donker and initialed by plaintiff.

**REQUEST NO. 2:** That NCI had full knowledge of the Actual Contract and all of the handwritten modifications made by its authorized agent, James Donker.

**REQUEST NO. 3:** NCI had actual knowledge that the Actual Contract contained the provision that plaintiff "may void contract at any time and for any reason."

**REQUEST NO. 4:** That when plaintiff voided the contract, pursuant to the terms of the contract, NCI brought a lawsuit against plaintiff claiming "breach of contract, specific enforcement, and tortuous interference with advantageous business relationship and/or contractual relationship."

. . . .

answers to some interrogatories and to requests for admissions on the eve of trial, it was too late to cure the

**REQUEST NO. 6:** That "Exhibit 1" to the aforementioned Michigan Summons and Complaint is a modified contract (hereinafter "Modified Contract"), which is identical to the Actual Contract, except that someone removed the handwritten modifications, added a sentence about "table tents" and inserted a "Governing Law" paragraph to the second page of the contract.

. . . .

**REQUEST NO. 10:** That attached hereto as Exhibit "C" is a true and correct copy of a Long Distance/Operator Services Agreement entered into between NCI and Mary Maniak of the New Concord Inn in Wisconsin Dells (hereinafter "Actual New Concord Contract"), (with the exception that Exhibit "C" has a note stating, "This is original contract", which does not appear on the original document).

. . . .

**REQUEST NO. 13:** That NCI commenced a breach of contract lawsuit against Ms. Maniak and/or New Concord Inn with the full knowledge that the attached Modified New Concord Contract was not signed by Ms. Maniak and that Ms. Maniak's actual contract allowed her to cancel if she was unhappy with NCI's service.

. . . .

**REQUEST NO. 16:** That NCI has been successful in enforcing altered, forged, or otherwise modified contracts in Michigan circuit court against Wisconsin businesses and consumers and has made a substantial profit from this practice.

**REQUEST NO. 17:** That attached hereto as Exhibit "E" is a true and correct copy of a Dunn & Bradstreet's Business Information Report (hereinafter "D&B Report") of defendant NCI as of February 28, 1999.

**REQUEST NO. 18:** That the financial information contained on the aforementioned D&B Report is true and accurate as of February 28, 1999.

**REQUEST NO. 19:** That as of February 28, 1999, NCI's sales amounted to $21,115,262.00 and NCI's worth was $4,664,296.00.

446

harm because of all the time and money Mucek had already expended attempting to prepare for trial.[8]

¶ 33. We also disagree with NCI's argument that it had already been penalized for its discovery abuse because the trial court responded to that abuse by striking NCI's answer and finding the company liable. Even after the trial court entered that order in April of 2000, NCI continued its pattern of abuse. As Mucek's counsel aptly observed on August 8, 2000, the first day of trial: "Up until approximately four days ago, NCI has done nothing to cooperate with getting plaintiff discovery or any facts regarding this case."

■

¶ 34. Furthermore, we would reach the same result even if a party's history of discovery abuse were not a proper consideration under the prejudice prong of Wis. Stat. § 804.11(2). Section 804.11(2) provides that a court "may" permit withdrawal of an admission if two

---

[8] The context of NCI's request to withdraw its admissions is also noteworthy. Although on appeal we focus on just the request to withdraw admissions, during the days immediately preceding the trial NCI was seeking to turn back the clock on the entire case. NCI sought reinstatement of its answer, an adjournment of trial, and withdrawal of its admissions. Because the trial court addressed and denied all of these requests, the court's comments did not focus on what would have happened if the court had only granted the request to withdraw admissions. However, given NCI's failure to cooperate with discovery, it is likely that Mucek would have needed an adjournment to obtain additional evidence. An adjournment of the trial and the need to again attempt discovery would itself constitute prejudice to Mucek. *See Equal Employment Opportunity Comm'n v. Jordan Graphics, Inc.*, 135 F.R.D. 126, 128–29 (W.D.N.C. 1991) (likely delay of trial and need for additional discovery added to prejudice that would be suffered if withdrawal were permitted).

conditions are met. "May" is generally construed as permissive and "shall" is generally construed as mandatory, unless a different construction is demanded by the statute to carry out the clear intent of the legislature. *City of Wauwatosa v. Milwaukee County*, 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963). Thus, we conclude that a court "may" permit withdrawal if both statutory conditions are met, but it is not required to do so. This construction is in keeping with federal case law on the topic. *E.g., Carney v. IRS*, 258 F.3d 415, 419 (5th Cir. 2001) ("Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission."); *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2nd Cir. 1983) ("Because the language of [Rule 36(b)] is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule."); *United States v. Kasuboski*, 834 F.2d 1345, 1350 n.7 (7th Cir. 1987) ("Rule 36(b) allows withdrawal of admissions if certain conditions are met *and the district court, in its discretion,* permits the withdrawal." (Emphasis supplied.)).

■

¶ 35. A trial court's general authority to maintain the orderly and prompt processing of cases provides authority to deny withdrawal, apart from the two factors in Wis. Stat. § 804.11(2). *See Furrenes v. Ford Motor Co.*, 79 Wis. 2d 260, 265–67, 255 N.W.2d 511 (1977). This authority is both statutory and inherent. Wisconsin Stat. § 805.03 provides: "[F]or failure of any party to comply with the statutes governing procedure in civil actions . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . ." In *Belich v. Szymaszek*, 224 Wis. 2d

419, 428, 592 N.W.2d 254 (Ct. App. 1999), we stated that it is a "well-established rule that a trial court has both statutory and inherent authority to sanction a party for failing to comply with procedural rules and for failing to obey court orders."

¶ 36. In light of these principles, we have no hesitation in affirming the trial court's exercise of discretion in this case. The trial court said it had rarely "seen such egregious conduct on the part of a defendant." The record, as set forth in the "background" section of this decision, amply supports this characterization. NCI continually failed to cooperate with discovery and, indeed, failed to cooperate with its own counsel. Its lack of cooperation continued after it was sanctioned the first time. At the hearing five days prior to trial, NCI provided no basis for finding that its failure to respond to the request for admissions was excusable. *Cf. Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 542–43, 535 N.W.2d 65 (Ct. App. 1995) (if noncomplying party's conduct is in bad faith or, "though unintentional, is so extreme, substantial and persistent that it can properly be characterized as egregious, the trial court may dismiss the action").[9] By simply laying out NCI's failure to cooperate right up until the eve of trial, Mucek met her burden of showing prejudice.

¶ 37. Therefore, we conclude that the trial court did not erroneously exercise its discretion when it denied NCI's request to withdraw its admissions.

---

[9] We note that federal courts have considered the absence of a reasonable excuse for failing to respond to a request for admission, even within the framework of the federal counterpart to Wis. Stat. § 804.11(2). *E.g., Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir. 1985); *Wallace v. Best Western Northeast*, 183 F.R.D. 199, 201–04 (S.D. Miss. 1998).

## B. Admission of Other "Bad Acts" Evidence

¶ 38. NCI next argues that the trial court errone-ously exercised its discretion when it permitted Mucek to question witnesses regarding other acts evidence in violation of Wis. Stat. § 904.04(2). In particular, NCI argues that the following evidence constituted inadmis-sible other acts evidence: (1) the testimony of Tylka and Maniak; (2) evidence of complaints filed against NCI with the Michigan Attorney General's office; and (3) a newspaper article indicating that NCI uses the threat of lawsuits to retain its customers. NCI also suggests that the evidence is irrelevant and unfairly prejudicial.[10] *See* Wis. Stat. §§ 904.02, 904.03.

¶ 39. The decision to admit or exclude evidence is discretionary and we will not overturn that decision absent a showing that the circuit court erroneously exercised its discretion. *Sullivan v. Waukesha County*, 218 Wis. 2d 458, 470, 578 N.W.2d 596 (1998). Other acts evidence is admissible if: (1) it is offered for an accept-able purpose under Wis. Stat. § 904.04(2); (2) it is relevant; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice. *See State v. Gray*, 225 Wis. 2d 39, 49–50, 590 N.W.2d 918 (1999).[11]

---

[10] NCI also refers to the evidence as hearsay and lacking a proper foundation. We may decline to address issues that have not been adequately briefed, and we do so here. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

[11] Wisconsin Stat. § 904.04(2) provides as follows:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when

450

¶ 40. In this case, NCI's liability was determined when the trial court struck NCI's answer to the complaint. Additionally, the parties stipulated to compensatory damages. Thus, the only remaining questions for the jury on the special verdict form were related to punitive damages. Punitive damage factors include the "grievousness of defendant's act, the outrageousness of his conduct and the 'degree of malicious intention.' " *Lundin v. Shimanski*, 124 Wis. 2d 175, 196, 368 N.W.2d 676 (1985) (citation omitted). Punitive damages serve the dual purpose of punishment and deterrence. *See Smith v. Golde*, 224 Wis. 2d 518, 532, 592 N.W.2d 287 (Ct. App. 1999). "It is self-evident that the greater the number of abusive incidents, the greater the need for deterrence and, correspondingly, an award calculated to achieve that purpose." *Id.*

¶ 41. In *Golde*, in the context of a punitive damages award, the court rejected a defendant's argument that a non-party witness's testimony concerning prior batteries committed by the defendant was inadmissible other acts evidence under Wis. Stat. § 904.04(2). In so holding, the court noted that "[o]ther acts evidence may be admitted for purposes other than those enumerated in § 904.04(2)." *Golde*, 224 Wis. 2d at 532. Thus, the witness's testimony concerning the prior batteries was admissible to show a pattern of abusive incidents, evidencing the maliciousness of the defendant's conduct. *See id.* at 532–33.[12]

offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[12] We question whether other acts analysis under Wis. Stat. § 904.04(2) even applies to evidence offered to support a

¶ 42. Similarly, the testimony of Tylka and Maniak, that they too were sued for breach of contract after voiding their contracts with NCI pursuant to terms added to the contract allowing the contract to be voided at any time, was properly admitted under Wis. Stat. § 904.04(2) and was relevant evidence of the grievous nature of NCI's conduct. The same analysis applies to the complaints filed with the Michigan Attorney General's office against NCI, encompassing claims that NCI fraudulently locked consumers into five-year contracts, and the newspaper article wherein hotel owners were quoted as saying that NCI prevents unsatisfied customers from changing phone service through legal intimidation. All of this evidence was properly admitted for the purpose of demonstrating the egregiousness of NCI's conduct.

¶ 43. We also reject NCI's argument that the probative value of the evidence was outweighed by the risk of unfair prejudice. "Unfair prejudice," as that term is used in Wis. Stat. § 904.03, means a tendency to influence the outcome of a trial by improper means. *Christensen v. Econ. Fire & Cas. Co.*, 77 Wis. 2d 50, 61, 252 N.W.2d 81 (1977). Other acts evidence is generally

---

claim of punitive damages, so long as liability has previously been established. The other acts evidence statute is primarily directed at preventing fact finders from being exposed to character and propensity evidence in the context of determining whether a party committed an alleged act. *See State v. Benoit*, 229 Wis. 2d 630, 639, 600 N.W.2d 193 (Ct. App. 1999). To the extent a fact finder relies on such evidence in this context, it runs afoul of longstanding Anglo-Saxon jurisprudence holding that persons should be found liable based on evidence of a particular act, not based on bad character or propensity to commit the alleged act.

excluded because it is believed that such evidence will "subtly encourage jurors to infer that the defendant has a propensity to commit such wrongs." *State v. Benoit*, 229 Wis. 2d 630, 639, 600 N.W.2d 193 (Ct. App. 1999) (citation omitted). Application of the traditional prejudice analysis as it applies to other acts evidence simply does not comport with the use of such evidence in the context of a punitive damages claim. This is because, as noted, introduction of the other acts is relevant precisely for the purpose of showing a defendant's propensity to commit a pattern of abusive acts. Accordingly, we affirm the trial court's decision to admit other acts evidence.

### C. Reduction of the Punitive Damages Award

¶ 44. We turn now to NCI's argument that the trial court erred in declining to reduce the jury's punitive damages award.

¶ 45. An award of punitive damages is within a jury's discretion. *Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 626, 563 N.W.2d 154 (1997). Nevertheless, a trial court may reduce punitive damages if the award is so clearly excessive as to indicate that the award was the product of passion or prejudice. *Id.* On review, it is the duty of this court to construe the evidence most favorably to the jury's verdict. *Durham v. Pekrul*, 104 Wis. 2d 339, 349, 311 N.W.2d 615 (1981). While there must be a reasonable relationship between the amount of compensatory and punitive damages, there is no multiplier or fixed ratio of compensatory to punitive damages. *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 194, 557 N.W.2d 67 (1996).

453

¶ 46. By failing to timely respond to the request for admissions, NCI admitted that it commenced the Michigan lawsuit with full knowledge of the contract actually signed by Mucek, that doing so constituted an intentional disregard for Mucek's rights, that it commenced the lawsuit for the purpose of maliciously harassing and intimidating Mucek into continuing to use NCI's services, and that its worth was $4,664,296.00.

¶ 47. Additionally, at trial Mucek presented evidence that after becoming aware of the language inserted into the contracts by Donker, making them voidable at any time, NCI continued the suits against Mucek and Maniak, and that Maniak was forced to remain an NCI customer for the contract term because she could not afford the legal fees. There was also evidence that NCI intimidated Michigan customers into retaining NCI services via the threat of lawsuits and that Michigan consumers had made allegations against NCI that NCI defrauded them into signing five-year contracts. In light of this evidence, we hold that the punitive damages award of $225,000 was not so excessive as to suggest that it was the result of passion or prejudice. Accordingly, we affirm the trial court's decision to uphold the punitive damages award.

### D. Discretionary Reversal

¶ 48. Finally, NCI requests discretionary reversal and an order for a new trial, pursuant to WIS. STAT. § 752.35, on the basis that the real controversy was not tried as a result of the trial court's alleged evidentiary errors. Because we have determined that no error occurred, we deny NCI's request for discretionary reversal.

*By the Court.*—Judgment and order affirmed.

¶ 49. DYKMAN, J. (*dissenting*). Once in awhile the conduct or character of a litigant so overshadows the merits of a case that the former becomes the reason the litigant cannot be successful at trial. Unfortunately, this is such a case.

¶ 50. The majority's analysis of this case, at its core, is this: Mucek satisfied the prejudice requirement of WIS. STAT. § 804.11(2)[1] (1999-2000) by telling the trial court of NCI's egregious behavior during discovery. And even if Mucek did not prove prejudice, the trial court had discretion to deny NCI's motion to withdraw its admissions in order to control its docket and as another sanction for NCI's discovery violations.

¶ 51. I disagree that Mucek met her burden of proving prejudice. There is nothing of record to support the majority's de novo conclusion that she did. There is a logical disconnect when the majority imports the concept of egregious behavior into a statute that uses other factors for its analysis. I conclude that the trial court erroneously exercised its discretion by doing so, and that the majority's attempt to construct a meaning for WIS. STAT. § 804.11(2) to remedy the difficulty gives breadth to the statute that the supreme court could not have anticipated when it adopted § 804.11 in 1975.[2] I therefore cannot join the majority decision, and accordingly respectfully dissent.

¶ 52. To begin with, I agree that NCI is an unsympathetic litigant. Discovery disputes are frustrating to trial courts, and litigants who fail to provide infor-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. The Wisconsin Court of Appeals Style Manual provides that we refer to supreme court rules, other than those found in WIS. STAT. ch. 809, as statutes, and we do so in this opinion.

[2] *See* S. CT. ORDER 67 Wis. 2d 585, 682–84 (eff. Jan. 1, 1976).

mation in response to discovery demands continually plague trial court calendars. That is what NCI did, and it paid a price for doing so. As a sanction, the trial court struck NCI's answer to Mucek's complaint. The result was that NCI admitted liability to Mucek, leaving only the issue of damages for the jury to decide.[3] NCI has not appealed this sanction, conceding that Mucek was entitled to the $4,300 she had paid to attorneys in Michigan to contest NCI's suit against her there.

¶ 53. But the issue in this case was not the actual damages Mucek had incurred, it was the punitive damages she wanted because of the conduct of an NCI employee, James Donker. The purpose of punitive damages is to punish a wrongdoer and deter the wrongdoer and others from similar wrongdoing. *Fahrenberg v. Tengel*, 96 Wis. 2d 211, 234, 291 N.W.2d 516 (1980). So what this lawsuit was about was Mucek's assertion that NCI had engaged in egregious business practices, contrasted with NCI's defense that it was a victim of Donker, and that his conduct was intended to benefit Donker and hurt NCI. Because NCI had defaulted on the merits, this case was only about damages.

¶ 54. I agree with the majority that the controlling statute is Wis. Stat. § 804.11(2) and that we review the trial court's application of this statute under an erroneous exercise of discretion standard. *See Schmid v. Olson*, 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983). The supreme court explained what is necessary for a proper exercise of discretion in *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981):

---

[3] This was a significant sanction. Generally, under the American rule, a successful litigant is not entitled to recover attorney's fees from the loser. *See City of Beloit v. Town of Beloit*, 47 Wis. 2d 377, 392, 177 N.W.2d 361 (1970).

A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.

¶ 55. I also agree that the test for permitting withdrawal of admissions is in two parts, both of which must be satisfied: (1) presentation of the merits of the action must be subserved; and (2) the party who obtained the admission must not be prejudiced by the withdrawal. Unlike the majority, however, I believe that both were satisfied, and, therefore, the trial court should have permitted NCI to withdraw its admissions. Neither the trial court nor the majority address whether presentation of the merits would be subserved as they both conclude that Mucek would have been prejudiced. But no one can dispute that the merits would have been facilitated had NCI been allowed to withdraw its admissions. NCI was forced to admit that it had engaged in all sorts of unethical and malicious behavior against Mucek, directly related to her punitive damage claim. Allowing the jury to consider NCI's actual behavior, which may or may not have been the same as the behavior admitted in Mucek's requests, would subserve the merits of the case.[4]

---

[4] A number of the requests for admission did not go directly to the merits. For example, request to admit number one stated: "That attached hereto as Exhibit 'A' is a true and correct copy of the actual [agreement] entered into between plaintiff and defendant." Withdrawing admissions such as these would not necessarily subserve the merits. Therefore, the trial court

¶ 56. In addressing the prejudice element of WIS. STAT. § 804.11(2), the majority writes: "It is evident that the trial court in this case exercised its discretion to deny withdrawal under the view that Mucek had met her burden of showing prejudice. Furthermore, the trial court's assessment of prejudice took account of NCI's ongoing failure to cooperate with discovery." Majority at ¶ 27 (footnote omitted). These sentences are the crux of the problem here, and I will address each in turn.

¶ 57. First, I agree with the majority's implicit conclusion that WIS. STAT. § 804.11(2) placed the burden on *Mucek* to show that she was prejudiced. The statute provides, "and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action . . . ." *See also* 3 GRENIG & HARVEY, WISCONSIN PRACTICE: CIVIL PROCEDURE § 411.5 (2d ed. 1994) ("*A party seeking to block the withdrawal* or amendment of an admission *must show* that the withdrawal or amendment would prejudice the party's efforts to present the merits of its case.") (emphasis added).

¶ 58. But the majority fails to explain its conclusion that the trial court believed that "Mucek had met her burden of showing prejudice." Majority at ¶ 27.[5]

---

would not have erroneously exercised its discretion in refusing to permit withdrawal of the admission to request number one, and other requests that were not disputed and did not go to the merits of the punitive damage claim. That would be a proper use of WIS. STAT. § 804.11(2).

[5] The majority guesses that the trial court properly placed the burden of proving prejudice on Mucek at an off-the-record conference held just prior to the on-the-record conference of August 3, 2000. Were I permitted to gaze into that crystal ball, I would reach the opposite conclusion. However, we are not permitted to consider matters not of record in the trial court.

The opposite is true. The record shows that the trial court believed the burden was on *NCI* to show that Mucek was *not* prejudiced rather than on Mucek to demonstrate that she was. In denying permission to withdraw NCI's admissions, the court said:

> Rarely have I really seen such egregious conduct on the part of a defendant and to come in at the last moment and say the other side is not prejudiced and we should be able to essentially reopen this matter simply doesn't carry any weight with me. I do agree with counsel for the plaintiff that the affidavit submitted sets forth no basis upon which—first hand basis upon which defendant explains the conduct and lack of performance according to the procedural rules of this case and the State.

¶ 59. By stating that *NCI's* assertion of no prejudice "doesn't carry any weight with me" and concluding that *NCI* had failed to present a good reason for failing to answer the requests for admission, the trial court placed the burden on NCI to show that Mucek was not prejudiced. Placing the burden of proof on the wrong party is an error of law. Errors of law constitute an erroneous exercise of discretion. *Johnson Bank v. Brandon Apparel Group, Inc.*, 2001 WI App 159, ¶ 9, 246 Wis. 2d 840, 846, 632 N.W.2d 107.

¶ 60. I also do not understand how the majority reaches its conclusion that "it is evident" that Mucek satisfied her burden of showing prejudice. There is nothing in the record supporting this conclusion. Asserting that something is evident does not make it so. We will reverse a trial court's decision as an erroneous exercise of discretion if it is not supported by the facts of record. *Id.* at ¶ 8.

*South Carolina Equip., Inc. v. Sheedy*, 120 Wis. 2d 119, 125–26, 353 N.W.2d 63 (1984). So I do not.

¶ 61. In arguing that she would be prejudiced, Mucek's attorney stated: "In the event that we have to prove all those allegations, we would have—my client would be entirely prejudiced by having to essentially start over from scratch." This explanation gives us no facts to analyze, only a conclusion to accept or reject without analysis.

¶ 62. Proving prejudice involves more than an *assertion* that one would have to "start over from scratch." In considering the prejudice requirement of WIS. STAT. § 804.11, the supreme court has looked for guidance to federal case law interpreting FED. R. CIV. P. 36(b), upon which § 804.11(2) is based. *Bank of Two Rivers v. Zimmer*, 112 Wis. 2d 624, 630–31, 334 N.W.2d 230 (1983); *Schmid*, 111 Wis. 2d at 238–39. Under this jurisprudence, Mucek was required to show that allowing NCI to withdraw its admissions would create difficulty in proving her case because of a sudden need to obtain evidence, the unavailability of a key witness, or inability to prepare. *See Manatt v. Union Pac. R.R. Co.*, 122 F.3d 514, 517 (8th Cir. 1997); *Brook Vill. N. Assocs. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982); *Schmid*, 111 Wis. 2d at 239. But Mucek did not contend that she would be unable to obtain a witness or other evidence that would be necessary to prove her case as a result of NCI being permitted to withdraw its admissions. Mucek's counsel asserted that his ability to prepare for trial would be impaired, but he did not begin to indicate how this was so. He only stated that he had prepared for trial "by sending requests for admission" and that he "gave up on setting up to prove all those allegations."

¶ 63. If Mucek's attorney was asserting that his sole preparation for trial had been to send requests for admission and therefore he would be unable to prepare

for trial as a consequence, this would demonstrate ineffective assistance of counsel much more than it would show prejudice.[6] Mucek did not serve NCI with the requests for admission until June 19, 2000—eighteen months after she initiated the lawsuit and less than two months before trial was scheduled to begin. The deadline for NCI to respond was July 18, three weeks before trial. Therefore, Mucek could not have "[given] up on setting up to prove all those allegations" until after that date, when discovery and preparation for trial should have been nearly completed. In the preceding nineteen months, Mucek should have been obtaining the evidence necessary to prove those facts. Further, NCI moved to withdraw its admissions on July 24, less than a week after the deadline had passed. This was not a case where a party admitted facts at the beginning of discovery, affecting the strategy of the opposing party, and then attempted to withdraw the admissions in the middle of trial.

¶ 64. The motion hearing was held on August 4. At the very most, Mucek lost thirteen business days—out of a total of more than 400—to prove the facts that had been admitted. It is difficult for me to accept that all of Mucek's discovery hinged on that short time period. Further, Mucek has never indicated, either at the motion hearing or in her appellate brief,

---

[6] The record demonstrates, however, that this was not what Mucek's attorneys had done. If Mucek's attorneys were willing to rely totally on NCI's Wis. Stat. § 804.11 admissions, they would have read the admissions and rested. But they did not, instead calling three witnesses, Mucek, a resort owner and a hotel owner who testified as to the legal difficulties they encountered by entering a NCI contract submitted to them by James Donker. Even at this late stage, we are not told what other witnesses Mucek would have called.

how those thirteen days would have made a difference in helping her to prove the admitted facts or how she would have used them differently had the facts not been admitted.

¶ 65. It is easy for Mucek or her attorneys to make vague references to the prejudice Mucek would suffer if she had to prove the assertions admitted when NCI failed to answer Mucek's requests for admission. But, "prejudice in the air" or "assumed prejudice" is not enough. She was required to explain what evidence she would have produced but now could not because she had relied on the admissions. More specifically, Mucek should have provided answers to questions similar to: Was Mucek hot on the trail of a disgruntled NCI ex-employee when the requests were deemed admitted? Was she about to schedule a conference with the Michigan attorney general? Had she planned on telephoning the Michigan newspaper that investigated NCI? If she cut short these efforts, which would have to be completed in three weeks, why did she fail to tell this to the trial court?

¶ 66. Ultimately, the only "prejudice" that Mucek showed was that she would have to prove the facts that NCI had erroneously admitted. But, as the majority recognizes, having to prove facts that would otherwise have been admitted is not sufficient to demonstrate prejudice under the statute. *See Bergemann v. United States*, 820 F.2d 1117, 1121 (10th Cir. 1987) ("The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of the truth."). If a requesting party could show prejudice by proving that he or she would have to prove the admitted facts, then prejudice would be demonstrated in *every* case.

¶ 67. The difficulty with the trial court's placing the burden of proof on the wrong party thus becomes evident. Had an inquiry been made of Mucek's attorney regarding what witnesses or evidence he would need to produce if the trial court granted NCI's motion, the majority or I could review the answers or reasons given to see whether they would support Mucek's claim of prejudice.[7] Had the burden been placed upon Mucek, we could now review what Mucek's attorneys "gave up on setting up to prove all those allegations." But we cannot review Mucek's demonstration of prejudice because she did not make one. As a result, I conclude Mucek failed to meet her burden to show prejudice under Wis. Stat. § 804.11(2).

¶ 68. The majority apparently agrees that Mucek failed to show that she would be unable to prepare for trial, or obtain evidence or witnesses if the trial court permitted withdrawal, as the majority opinion is silent on this issue and fails to point to any portion of the record to the contrary. Rather than conclude that Mucek demonstrated prejudice in the traditional sense of the word, the majority concludes that, in considering the prejudice element, the trial court "took account of NCI's ongoing failure to cooperate with discovery," and that "a trial court may consider a party's history of discovery abuse when deciding whether to permit withdrawal or amendment of admissions . . . . when determining prejudice under [Wis. Stat.] § 804.11(2)." Majority at ¶¶ 27–28.

¶ 69. I agree with the majority that the trial court considered NCI's past "egregious conduct" in denying NCI's motion to withdraw its admissions. I disagree,

---

[7] But it was not the duty of the trial court or opposing counsel to make Mucek's case for her.

however, that Wis. Stat. § 804.11(2) allows the trial court or this court to consider NCI's history of discovery abuse in the way that they have. First, it cannot be disputed that "egregious conduct" is not a factor that § 804.11(2) permits trial courts to consider. Rather, the plain language of § 804.11(2) places the required focus on two factors: the effect upon the litigation and prejudice to the resisting party. *See FDIC v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) ("FRCP 36(b) does not require the moving party to prove excusable neglect") (quoting 10A Federal Procedure L.Ed. § 26.500 (1988)). Therefore, neither NCI's past discovery violations nor the reasons for NCI's failure to respond to the requests for admission were relevant to the trial court's consideration of the factors under § 804.11(2).[8] By adding

[8] In footnote six of its opinion, the majority cites several federal and out-of-state cases that it contends supports its conclusion that past discovery violations are a relevant consideration under Wis. Stat. § 804.11(2). *See United States v. Kenealy*, 646 F.2d 699, 702–03 (1st Cir. 1981); *ADM Agri-Industries, Ltd. v. Harvey*, 200 F.R.D. 467, 471 (M.D. Ala. 2001); *United States Clip Corp. v. McThal, Inc.*, 729 S.W.2d 658, 660 (Mo. Ct. App. 1987); *Cleveland Trust Co. v. Willis*, 485 N.E.2d 1052, 1053–54 (Ohio 1985). I disagree that any of these decisions provides authority for the majority's conclusion in the case before us.

The majority cites to only one federal court of appeals decision, *Kenealy*. But it is not clear that the defendant in *Kenealy* ever moved to withdraw his admissions under Fed. R. Civ. P. 36(b) and the First Circuit ignored the standard for permitting withdrawal under the rule. Therefore, *Kenealy* is of no use in deciding this case. *Cleveland Trust* similarly failed to consider the two factor test. Although *McThal* did refer in passing to the prejudice requirement, it failed to give a reasoned explanation of its decision or provide any citation to other authority. *Harvey* was a federal district court decision, and the

factors to a rule adopted by the supreme court, the majority has usurped a right held only by that court. The court of appeals has no rule making authority, and certainly cannot amend supreme court rules.

¶ 70. Second, the trial court did much more than "take account" of NCI's past conduct in determining prejudice; it substituted the concept of "egregious conduct" for that of "prejudice." To the extent that the trial court considered NCI's past discovery abuses, this was the *only* factor that the court considered.

¶ 71. The majority converts the trial court's consideration of NCI's past "egregious conduct" into one of prejudice by stating that NCI's failure to cooperate with previous discovery requests worked to "magnify" the prejudice. Majority at ¶ 31.[9] But no matter how many

majority relies on several other district court decisions throughout its opinion. However, the issue at the heart of this case is whether the trial court properly exercised its discretion in refusing to permit NCI to withdraw its admissions. For obvious reasons, the weight of district court decisions regarding the scope of their own discretion is questionable, even as persuasive authority.

[9] The majority writes that an "ongoing failure to provide documents and information will frequently magnify the importance of requests for admissions precisely because the requesting party has already been deprived of requested information and is all the more dependent on admissions to identify what is actually in dispute." Majority at ¶ 31.

First, I note that a request for admission "is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness." 8A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2253 (1994). Because requests for admission are not intended as vehicles to discover facts, it makes no sense to rely on them more heavily when other discovery procedures fail. Second, I find unpersuasive the

times one "magnifies" zero, the result is still zero.[10] The majority does not and cannot show that Mucek demonstrated a small amount of prejudice that was magnified by NCI's discovery violations. Mucek made *no* showing of prejudice at all. The majority speculates how Mucek, or similar parties in her place, could have been prejudiced, but never indicates where in the record Mucek *demonstrated* that she was prejudiced.

¶ 72. Further, referring to the prejudice suffered by Mucek as a result of NCI's "fail[ure] to cooperate throughout the pendency of the case" is also insufficient. I agree that Mucek's ability to gather facts was significantly impaired by NCI's past discovery violations. But that is not the test under WIS. STAT. § 804.11(2). Rather the statute required Mucek to demonstrate how *withdrawing the admissions* would hurt her ability to prepare for trial. The statute no more permits substituting past prejudice for current prejudice than it allows replacing prejudice with "egregious conduct."

¶ 73. The majority next concludes that because WIS. STAT. § 804.11(2) uses the word "may," trial courts are not required to permit withdrawal even if both statutory conditions are met. Majority at ¶ 34. Al-

---

majority's suggestion that Mucek was "left in the dark" regarding whether many of the requests for admission were in fact disputed. There could have been no doubt in Mucek's mind that NCI disputed that "NCI commenced the Michigan Lawsuit for the purpose of maliciously harassing and intimidating the plaintiff into continuing to use NCI's services." As I will discuss further in ¶ 84, many of the requests to admit did not serve the purpose of limiting the case to core issues, but rather to eliminate core disputed facts directly related to the merits.

[10] *See Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).

though I agree that the language of the statute is permissive and thus contemplates discretion, I find it difficult to contemplate instances where it would be a proper exercise of discretion to deny a motion to withdraw an admission when withdrawal would both further the merits and the opposing party would not be prejudiced. Federal appellate courts considering this issue generally agree that trial courts must permit withdrawal when both elements of the test are satisfied. *See, e.g., FDIC v. Prusia*, 18 F.3d 637 (8th Cir. 1994); *Hadley v. United States*, 45 F.3d 1345 (9th Cir. 1995).[11] I conclude that the discretion contemplated by § 804.11(2) is with regard to the trial court's determination *whether* prejudice exists or whether the merits would be subserved, not discretion to deny permission to withdraw when the statutory requirements have been met. *See* GRENIG & HARVEY, *supra,* at § 411.5 ("Courts have considerable discretion whether to permit withdrawal or amendment, *but that discretion must*

---

[11] The cases the majority cites in support of its proposition also seem hard pressed to explain what non-statutory factors a trial court may consider in the context of motions to withdraw admissions. The statements made by the courts in both *Carney v. Internal Revenue Service*, 258 F.3d 415, 419 (5th Cir. 2001), and *United States v. Kasuboski*, 834 F.2d 1345, 1349–50 (7th Cir. 1987), were not directly related to the merits of the case. In neither case did a party attempt to withdraw admissions under Rule 36(b), so the courts did not consider what a court's discretion under the rule entailed. The court in *Donovan v. Carls Drug. Co.*, 703 F.2d 650 (2nd Cir. 1983), did affirm the district court's decision to deny permission to withdraw. *Id.* at 652. However, the court did not consider the two factors listed in Rule 36(b) and provided no limitations on a court's exercise of discretion, suggesting the clearly incorrect conclusion that such discretion was unbounded.

467

*be exercised within the two-step test in Section 804.11(2).")* (emphasis added).

¶ 74. Even if there are instances where trial courts may refuse permission to withdraw despite both elements being met, I still disagree with the majority. The majority concludes that "[a] trial court's general authority to maintain the orderly and prompt processing of cases provides authority to deny withdrawal, apart from the two factors in WIS. STAT. § 804.11(2)." Majority at ¶ 35. There is no indication in the record that the trial court based its decision on a need "to maintain the orderly and prompt processing of cases." Instead, the record shows that the trial court was applying the elements of the statute as it interpreted them. What the majority has done is to manufacture the trial court's calendar for it, and then conclude that the invented calendar justified the trial court's decision.

¶ 75. The trial court might have concluded that denying permission to withdraw would help control its docket. But the problem with affirming a trial court's decision not to permit a WIS. STAT. § 804.11(2) withdrawal based upon judicial economy is that judicial economy will be furthered in every case. If the trial court has already determined that permitting withdrawal would subserve the merits, refusing to permit withdrawal will invariably tend to resolve the case more quickly than a trial on the merits. Therefore, permitting judicial economy as a factor to decide § 804.11(2) motions gives absolute discretion in denying motions to withdraw, something which trial courts possess in no other circumstance.

¶ 76. The majority next refers again to NCI's past discovery abuse as providing the trial court with justification to deny permission to withdraw. It refers to the court's inherent and statutory authority to sanction

parties for failing to comply with procedural rules and court orders. I agree that the authority of trial courts to sanction parties for litigation misconduct is important, and necessary in maintaining the administration of justice. *See Schultz v. Sykes*, 2001 WI App 255, ¶ 2, 248 Wis. 2d 746, 638 N.W.2d 604. But the majority adopts a test permitting a trial court to base its decision under WIS. STAT. § 804.11(2) *solely* on the party's past behavior without any consideration of the factors in the statute. I believe it is erroneous to consider only past conduct and ignore the elements provided in the statute as the majority does here. *See Schmid*, 111 Wis. 2d at 237 ("It is well established that a decision which requires the exercise of discretion and which on its face demonstrates no consideration of any of the factors on which the decision should be properly based constitutes an abuse of discretion as a matter of law."); *see also Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1313–14 (8th Cir. 1983) (concluding that district court erred in denying plaintiff's motion to withdraw its admissions under Rule 36(b) when the court based its decision, not on factors set out in the rule, but instead on the "pattern of delay" demonstrated by the plaintiff and her propensity to "flout" time limits).

¶ 77. Even if such consideration were permissible in some cases, it would not be so here, where the trial court's reference was to NCI's behavior prior to receiving Mucek's request for admissions. I agree that NCI's refusal or neglect to comply with discovery demands was egregious. But this does not mean that NCI's reasons for failing to respond to Mucek's requests for admissions were similarly egregious. The majority insists that NCI "continued its pattern of abuse" even after the trial court struck its answer in April 2000. Majority at ¶ 33. But the majority fails to point to even

one example of this, and quotes only the observation by Mucek's attorney at the first day of trial that "NCI has done nothing to cooperate with getting plaintiff discovery or any facts regarding this case." It is doubtful that there is such an example, as the record does not indicate that Mucek made any further discovery requests of NCI between April 2000 and when she sent the requests for admission in June. Therefore, even assuming that it was appropriate for the trial court to consider NCI's behavior in deciding NCI's motion to withdraw, it should have limited its consideration to the conduct occurring after Mucek served NCI with the requests for admission.

¶ 78. In considering an appropriate sanction, trial courts should consider whether there are less severe sanctions that would effectively deter the conduct. *Schultz*, 2001 WI App 255 at ¶ 19; *see also Hadley*, 45 F.3d at 1350; WRIGHT & MILLER, *supra*, at § 2264 ("[C]ourts should explore the possibility that prejudice can be avoided by imposing other conditions rather than holding a party to an untrue or unintended admission on a vital issue in a case."). Here, the trial court failed to consider any alternatives to refusing permission to withdraw the admissions.

¶ 79. The fact that NCI perpetuated discovery abuses does not mean we can ignore a statutory requirement intended to protect litigants from being deprived of their right to have a case decided on the merits. Courts have an obligation to follow appropriate procedures in reaching decisions, even in cases involving unsympathetic litigants. I agree with the court in *King v. Kelly*, 137 So. 2d 808, 814 (Miss. 1962), which stated:

> The man trained in the law will know that we are protecting and preserving for everyone—good, bad or

indifferent—one of the standard safeguards provided for the assurance of a fair trial in all cases. If it should be ignored here, it is destroyed and will not exist at the time of the next trial, regardless of who is the defendant.

¶ 80. The right to be heard on the merits is even more important when the merits involve issues regarding damages. We held in *Smith v. Golde*, 224 Wis. 2d 518, 530–31, 592 N.W.2d 287 (Ct. App. 1999), that even defaulting defendants are entitled to contest the amount of damages, which we termed a "substantial and fundamental right." Therefore, whatever discretion a trial court possesses to deny permission to withdraw admissions when both elements of Wis. Stat. § 804.11(2) have been met, this discretion is extremely limited if not eliminated by *Golde* when a party has inadvertently admitted facts that are related only to a damages claim.[12]

---

[12] The trial court attempted to comply with the mandate of *Smith v. Golde*, 224 Wis. 2d 518, 592 N.W.2d 287 (Ct. App. 1999), by permitting NCI to present evidence regarding the punitive damages despite its admissions. The difficulty that NCI's admissions created at trial, however, was evident. Because of the Wis. Stat. § 804.11 admissions, NCI's president was forced to answer questions such as "You did not deny this statement: That NCI commenced the Michigan lawsuit involving Miss Mucek with full knowledge that the modified contract was not the contract signed by the plaintiff, did you?" NCI's president, faced with his § 804.11 admission, could only answer by stating that he did not deny the statement, nor did he admit it. This was not lost on the jury. It sent a note to the trial court asking: "Where did the statements of admittance from NCI come from and what was their context? These were the 3 or 4 statements that were read to Mr. Makens [NCI's president] in which he said he neither admitted nor denied them." The court responded: "These statements were made on the basis of

¶ 81. In sum, because the merits would have been furthered by permitting withdrawal and Mucek failed to show that permitting withdrawal would have prejudiced her, I would reverse and remand for a new trial, allowing NCI to withdraw its admissions.

¶ 82. There is a further reason why I believe the trial court should have allowed NCI to withdraw its admissions and why Wis. Stat. § 804.11(2) should be construed so as not to unnecessarily deprive a party of the opportunity to be heard on the merits. Although both federal and Wisconsin law recognize that requests for admission may be used to establish "ultimate issues," Judicial Council Committee's Note, 1974, Wis. Stat. § 804.11; *Zimmer*, 112 Wis. 2d at 630; *Schmid*, 111 Wis. 2d at 236, when these admissions are made inadvertently, courts should allow withdrawal upon motion unless the resisting party can demonstrate real prejudice. *See Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1577–78 (11th Cir. 1988).

¶ 83. The purpose of Wis. Stat. § 804.11 is to:

[E]xpedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry.

Requests for admission define and limit the contro-

---

questions submitted to NCI by the plaintiff which were not answered, thus are considered under the law to be admitted." Two jurors dissented from the ensuing verdict.

This shows that discretion to deny permission to withdraw admissions regarding facts related to a damages claim and *Golde* are incompatible. Rather than place jurors in the confusing setting they were forced into in this case, trial courts should permit withdrawal when both elements of Wis. Stat. § 804.11(2) are met.

472

*versy between parties to a lawsuit, freeing the court and the parties to concentrate on the matters at the heart of the dispute.*

3 GRENIG & HARVEY, *supra* at § 411.1 (emphasis added). In other words, requests for admission are intended to save time and resources by allowing parties, generally during the beginning of discovery, to stipulate to undisputed facts so that they can focus on core issues. They are not meant to be used as a last minute ambush to short circuit a trial. Thus, when parties are denied permission to withdraw erroneous admissions that are central to the merits and are in fact disputed, this subverts the purpose of the statute.[13]

¶ 84. Particularly in this case, refusing to allow NCI to withdraw its admissions only encourages parties to use requests for admissions in ways for which they were never intended.[14] Here, Mucek's attorneys could

---

[13] As one commentator has pointed out, a refusal to permit withdrawal of inadvertent admissions of central issues will often ultimately lead to the expenditure of more rather than less court time as the losing party is likely to file a malpractice action against his or her attorney. *See* Shirley Engel, *Requests for Admission—A Discovery Trap,* 18 UWLA L. REV. 61, 75 (1986).

[14] For a more detailed explanation of the improper use of requests to admit, *see Elston v. City of Turlock,* 695 P.2d 713, 720 (1985) (Kaus, J., concurring); *see also* Engel, *supra* note 13. Engel summarizes the reasons courts have given in strictly construing request-for-admission statutes:

> 1. The law abhors a forfeiture and requires strict construction of statutes imposing forfeiture.

> 2. The policy of the law is to try cases on their merits in order to do justice.

> 3. Requests for admission are not true discovery devices. They serve a function similar to pleadings in a lawsuit. Because

not have seriously expected an affirmative answer to a request to admit that NCI intentionally files frivolous lawsuits against its customers to maliciously harass and intimidate them into continuing to use NCI's services, and similar requests. The attorneys could have had but one rational expectation: that NCI might not respond to the requests within thirty days, and since the time for trial was at hand, they could assert prejudice and perhaps prevail. This expectation was enhanced by their knowledge that NCI's attorney had withdrawn, and that NCI was, they believed, unrepresented. They expected, if they were lucky, a Turkey shoot, and they got one. This was not a lawsuit, the purpose of which is to find the truth. This was a game, and its name was "Gotcha." NCI was certainly had. Although the trapped party in this case may have been a large corporation with a history of discovery abuse, it is likely that pro se or inexperienced litigants will be the ones who are most often injured by the majority's judicial policy against withdrawing admissions.

¶ 85. No one can say how this case would have turned out had it been tried without the Wis. Stat. § 804.11 admissions. It is difficult to reward a litigant that has thumbed its corporate nose at a plaintiff, her attorneys, and the court by stonewalling all requests for discovery. NCI has suffered a $225,000

they are designed to settle issues rather than discover facts and because they are often used as a vehicle for summary judgment, the procedure regarding them must be strictly construed to do justice.

4. Imposing default where the requests do not seek to set issues to rest but seek to cause [a party] to admit he has no case is an unduly harsh penalty and results in a windfall to [the other party].

Engel, *supra* note 13, at 74.

judgment against it, a matter that concerns me some-
what. However, what has suffered most in this case is
the appearance of justice, and that concerns me much
more. We attempt to maintain a system of justice that
not only produces a fair result, but also gives the
appearance of being fair. *State v. Love*, 218 Wis. 2d 1, 10,
579 N.W.2d 277 (Ct. App. 1998), *rev'd on other grounds,*
227 Wis. 2d 60, 594 N.W.2d 806 (1999). While I cannot
know if the former test is met here, it is clear to me that
the latter is not. Because Mucek failed to show what
evidence she would have produced had NCI answered
her requests to admit, she could not satisfy the court
that she would be prejudiced in maintaining her action
were the trial court to permit NCI to withdraw its
admissions. Were I writing for the majority, I would so
conclude, and remand for a new trial. But I am not, and
accordingly, I respectfully dissent.